[Civ. No. 13396.   Second Dist., Div. Two.   Apr. 27, 1942.]

MASATO SUMIDA et al., Appellants, v. PACIFIC AUTO-MOBILE INSURANCE COMPANY (a Corporation), Respondent.

J. Marion Wright and Owen E. Kupfer for Appellants.

Parker & Stanbury, Harry D. Parker, Raymond G. Stanbury and Vernon W. Hunt for Respondent.

McCOMB, J.—From a judgment predicated upon the granting of defendant's motion for a directed verdict in an

action brought pursuant to the provisions of section 11580, subdivision b(2) of the Insurance Code, for the purpose of compelling defendant to pay unsatisfied judgments previously recovered against the alleged insured of defendant, plaintiffs appeal.

Viewing the evidence in the light most favorable to plaintiffs (appellants), as we must in reviewing a judgment based on a directed verdict (*In re Lances' Estate*, 216 Cal. 397, 400 [14 P. (2d) 768]), the material facts are:

Plaintiffs Sumida, Ishizuka, Shimono, Ishikawa, and Harada recovered a judgment for personal injuries received while they were riding in an automobile owned by K. Meno. Plaintiff Matsumoto as the administrator of the estate of S. Hatakeyama, deceased, also recovered a judgment for the wrongful death of Mr. Hatakeyama, who died as a result of injuries received in the same accident which resulted in injuries to the other plaintiffs in the present suit. At the time of the accident the injured parties were being transported in a pick-up truck owned by Mr. Meno from the fields where they had been working to the camp where they were living.

Executions on the judgments were issued and returned unsatisfied, and the present litigation was then instituted.

May 12, 1937, defendant issued an insurance contract to K. Meno and/or T. Ishibashi covering the automobile in which the injured plaintiffs and Mr. Hatakeyama, deceased, were riding at the time of the aforementioned accident. This policy contained, among other provisions the following:

"THE COMPANY DOES HEREBY AGREE with the ASSURED named in the DECLARATIONS made a part hereof, in consideration of the premium hereinbefore provided, as respects accidents occurring during the period of this Policy, by reason of ownership, maintenance or use of any automobile described in said Declarations, only while within the limits of the United States (exclusive of Alaska, the Hawaiian, Philippine and Virgin Islands, Panama Canal Zone, Porto Rico, and other possessions) and Canada, including while on coastwise steamer between ports within said limits, subject however, to the conditions, limitations and exclusions contained in this Policy, as follows:

"CLAUSE A. LEGAL LIABILITY FOR BODILY INJURIES OR DEATH:

"To pay the loss from the liability imposed by law upon the Assured for damages on account of bodily injuries, in-

cluding death resulting therefrom, accidentally suffered, or alleged to have been suffered by any person or persons (except employees of the Assured while engaged in operating or caring for an automobile in the course of employment of the Assured, or injured in the course of employment in the business of the Assured or entitled to benefits under any Workmen's Compensation law, plan or agreement) as a result of the ownership, maintenance or use, for the purposes described in Declaration 5, of any automobile described in Declaration 9, including the loading and unloading of such automobile; in addition to the cost of rendering first aid to the injured, of defending any suit or civil action at law in the name of and on behalf of the Assured arising out of such accidents, whether groundless or not, and interest accruing after entry of judgment on said amounts.''

Defendant denied liability in the present action upon the sole ground that at the time of the accident the insured vehicle was being used to carry persons ''for a consideration'' within the exclusion clause of the policy, which read as follows:

''This Policy excludes loss resulting or arising from any of the following causes, or while any automobile described herein is being used or maintained under the following conditions, unless otherwise specifically provided for by endorsement attached to this Policy: . . . d. While carrying persons for a consideration, express or implied, or while rented or leased.''

At the trial there was received in evidence the deposition of Mr. Meno, the insured, whose testimony in substance was as follows:

''I testified at the trial of the Superior Court actions in November, 1938, as follows: 'Q. Did you have any arrangement with the farmers whereby the farmers paid you for these plaintiffs' transportation? A. Yes, I had an arrangement that I would get ten cents for each person. Q. And who paid that? A. The farmers.' I so testified at the trial but I would like to make an explanation. The arrangements that I had with the farmers were that the farmers were to call for the boys and bring the boys back to camp; but in instances where the farmer was very busy and could not do this, I arranged to take the boys back and forth, for which the farmers in the emergency were to pay me ten cents per head per person. It was arranged that I was supposed to go and pick the boys up at 5 o'clock in the afternoon on the day of the accident.

They were to be picked up at the Nakata and Tagama ranch. The reason for that was these farmers were busy at that time and as an emergency I took them there and was to meet them in the afternoon of that day . . . That was ten cents per person for that day only. Every time I transported these men in place of the farmers it was ten cents per man each day regardless of how many trips there might be in the course of a day's time. It was ten cents per person per day.''

There was also received a transcript of the testimony of plaintiff Ishikawa given at the trial of his action against Mr. Meno, which testimony was in substance thus:

''I met Meno in 1937 a little before June. I had a talk with him about an arrangement for me to go to Palos Verdes. I asked him how much it would be for board and he said fifty-five cents, and that he would take us and bring us back to and from the ranch. Mr. Meno was the big boss out there. He had a labor camp . . . I know the other boys here the plaintiffs in this action. They were all out at Meno's camp on the date of the accident. They were all working under the same arrangement . . . Meno said that he would get work for me. He said that he would collect the money and then pay me. I was supposed to board there and for my work I was to get thirty cents an hour. Mr. Meno was to get fifty-five cents a day for boarding me. Mr. Meno said that he would take me from the camp to the farms in the morning and call for me in the evening. He said he had a car that he would take me in.''

Mr. Takenaga, a farmer who had employed the injured on the day of the accident, testified that he had hired men from Mr. Meno's camp during the period from September to August, 1937, and he stated:

''The boys got to the farm in June, 1937, on Meno's truck. He came after them. Sometimes they walked back and other times I took them back . . .

''Q. At any time was there any charge made to you by Mr. Meno at the times that he came and got the boys, or brought them to the ranch? . . .

''A. No; to my knowledge there wasn't any . . . I paid Mr. Meno the money for the work of the boys. I did not pay anything to the boys myself. The basis as I recall it, I think, was twenty-five cents an hour.''

He also testified that he did not have any arrangement

with Mr. Meno for transporting the men to and from their work, and that he made no payments to Mr. Meno for such purpose.

Plaintiff Sumida testified that he did not hand any "cash money" to Mr. Meno for anything and that as he rode to and from work he had never, including the day on which the accident occurred, handed Mr. Meno any money in cash or currency.

It is necessary for us to determine three questions, which will be stated and answered hereunder seriatim.

*First: Was it error for the trial court to grant defendant's motion for a directed verdict on the ground that the undisputed evidence disclosed that at the time of the accident, which resulted in the judgments against Mr. Meno, the plaintiffs and the decedent were riding in the truck owned by Mr. Meno, while giving a consideration for such transportation and therefore the case fell within the exclusion clause of the insurance policy issued by defendant?*

This question must be answered in the negative. The undisputed evidence as set forth above was susceptible of only one interpretation and that was that Mr. Meno was receiving 10 cents per person for the transportation of the parties at the time the accident occurred which resulted in the unfortunate injuries and death. Therefore, under the exclusion clause of the policy as set forth, *supra*, defendant was not obligated to pay the judgments which had been obtained against Mr. Meno.

*Second: At the time of the accident in question was the truck being used for a merely permissible business use in accordance with the terms of the policy?*

This question for the reasons set forth in the answer to the first question must be answered in the negative. The exclusion clause of the policy was clear and free from ambiguity and under the undisputed facts as set forth above the accident occurred under conditions which excluded it from the terms of the policy which defendant had issued. There is no other provision in the policy upon which plaintiffs may base their claim than those set forth above.

*Third: Did the trial court err in sustaining defendant's objections to:*

*(a)   the following questions asked Mr. Sumida:*

*"Q.   What was said, if anything, about that arrangement, other than there would be fifty-five cents a day deducted?"*

*"Q. Did you ever pay Mr. Meno any money, yourself, in cash for transportation, or anything else?"*

*"Q. Did Meno ever tell you that he expected to receive ten cents a day from any farmers that he took you out to?"*

*"Q. Did you know that he ever stated that he was receiving ten cents a day for transporting you?"*

*"Q. Did Mr. Meno state to you at any time as to whether or not he divided up in any way or apportioned in any way this fifty-five cents that you say he deducted from your wages?"*

*(b) Plaintiffs' offer to prove for the purpose of impeaching Mr. Meno's testimony, given in his deposition as set forth above, that Mr. Meno prior to the taking of his deposition had stated that he received nothing from the farmers for transporting the plaintiffs to work on the day of the accident or on any other day, and that he had no arrangement with the farmers to receive anything for such transportation?*

This question must be answered in the negative.

■ (a) We will not consider whether the trial court properly sustained objections to the questions set forth above, for the reason that the law is established in California that, where a question to which an objection is sustained does not in itself indicate that the answer to it will be favorable to the party seeking to introduce the testimony, before the ruling will be reviewed on appeal an offer of what is proposed to be proven must first be made to the trial court so that the reviewing court can determine whether the proposed evidence would have been material and beneficial to the party offering it. (*Travelers Fire Ins. Co.* v. *Brock & Co.*, 30 Cal. App. (2d) 115, 117 [85 P. (2d) 904].) In the present case the questions to which objections were sustained did not indicate that the answers would be material or beneficial to plaintiffs nor was any offer of proof made as to what answers the witness would give to the questions.

■ (b) The objection to the offer of proof was properly sustained on the ground that a proper foundation for the admission of the testimony had not been laid. A witness may be impeached by evidence that he has made at other times statements inconsistent with his present testimony, but before this can be done the statements must be related to him with circumstances of times, places, and persons present and he must be asked whether he made such statements and, if so, allowed to explain them. (Code Civ. Proc., § 2052.) In the

present case Mr. Meno was not present at the trial, and when his deposition was taken he was not asked whether he had made the alleged inconsistent statements in the presence of other parties at a particular time and place. Therefore the foregoing rule was not complied with and the court's ruling was correct.

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.