[L.A. No. 30759. Dec. 19, 1978.]

MARJORIE J. CLEMMER et al., Plaintiffs and Appellants, v. HARTFORD INSURANCE COMPANY, Defendant and Appellant.

870

**COUNSEL**

Gibson, Dunn & Crutcher, John H. Sharer and Fred F. Gregory for Plaintiffs and Appellants.

Overton, Lyman & Prince, Carl J. Schuck, John D. McCurdy, Valerie Baker and Gwen H. Whitson for Defendants and Appellants.

**OPINION**

MANUEL, J.—By this action plaintiffs, the widow and the son of a victim of a killing, sue to recover from the liability insurer of the slayer the amount of a wrongful death judgment obtained against him. Following a jury verdict the trial court entered judgment against the defendant insurer, but it subsequently granted defendant's motion for new trial, tendered on all issues, on the sole issue submitted to the jury—i.e., whether the death in question was caused by a willful act—and denied it on all other issues. Plaintiffs appeal from the aforesaid order granting a limited new trial. Defendant appeals from that portion of the judgment which is not affected by the order granting a limited new trial and also from the orders of the trial court denying its motions (1) for judgment notwithstanding the verdict, (2) to set aside and vacate the judgment and enter a new and different judgment, and (3) for a new trial on all issues. Its appeal must be dismissed insofar as it purports to be from the latter two orders, such orders being nonappealable. Defendant has also filed a protective cross-appeal from the whole of the judgment. (Cal. Rules of Court, rule 3(c).)

### FACTUAL BACKGROUND

Plaintiffs, Marjorie Clemmer and Hugh Clemmer, are respectively the widow and minor son of Dr. Hugh Clemmer, deceased. Dr. Daniel Lovelace had worked for Dr. Clemmer, and he was shocked when the latter on January 29, 1971, advised him that the employment relationship would be terminated. The next day Dr. Clemmer was shot and killed by Dr. Lovelace, the Hartford Insurance Company's insured. Just prior to the shooting Dr. Lovelace, from his apartment window, had observed Dr.

Clemmer in a nearby gas station. Dr. Lovelace placed a pistol in a shoe box, went to his car, placed the box and pistol on the seat, and drove across the street (from his apartment) to the gas station. He pulled next to a gas pump and spoke to the attendant. He then left the car and, carrying the gun, approached Dr. Clemmer. He greeted Dr. Clemmer, then shot him twice. These shots were followed by two more shots. Finally, Dr. Lovelace knelt close to the victim and at close range shot him in the head. The gun was placed on the ground. Dr. Lovelace remarked that he knew what he was doing and that Dr. Clemmer was destroying him professionally.

For the slaying of Dr. Clemmer, Dr. Lovelace was tried and convicted of murder in the second degree. At the criminal trial Dr. Lovelace did not testify, and at the conclusion of the guilt phase he withdrew his plea of not guilty by reason of insanity. Thereafter plaintiffs obtained a default judgment against Dr. Lovelace in the sum of $2,003,421 for the wrongful death.

In the instant action, commenced by plaintiffs against the Hartford Insurance Company (Hartford), plaintiffs claim that Hartford is obligated to satisfy the judgment against Dr. Lovelace because of a personal comprehensive liability policy issued by Hartford with limits of $5 million. Hartford defended the action on the ground, among others, that Dr. Lovelace's killing Dr. Clemmer was a willful act and thus excluded from coverage by the law of this state (citing Ins. Code, § 533).[1] The trial court made divers rulings.[2] Inter alia, it rejected the contention that the second degree murder conviction of Dr. Lovelace collaterally estopped

---

[1]Section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

[2]The trial court's findings included the following:

"3. On January 30, 1971, Lovelace killed Dr. Clemmer by shooting him five times with a .45 caliber revolver, for which Lovelace was charged with murder by the People of the State of California in the case of People v. Lovelace, No. A116509 (Exhibit A in evidence).

"4. On July 26, 27, 28, 29 and 30, 1971 trial was held on these charges and Lovelace was found guilty of murder in the second degree. On August 20, 1971 a judgment of conviction of second degree murder was entered against Lovelace for the shooting of Dr. Clemmer. (Exhibit A in evidence.) No appeal was taken from said judgment, and the same duly became final. Lovelace was sentenced to serve the term prescribed by law and still is confined in prison."

The court's conclusions of law included:

"11. The judgment adjudging Lovelace guilty of second degree murder necessarily determined among other things as between Lovelace and defendant Hartford that Lovelace's killing of Dr. Clemmer was an unlawful killing with malice aforethought, that

the plaintiffs from contending the killing was not willful.[3] The court also rejected Hartford's move to reopen the question of damages.

The jury returned a special verdict[4] that Dr. Lovelace lacked the mental capacity to intend to shoot and harm Dr. Clemmer and lacked such capacity to govern his own conduct. After the filing of findings of fact and conclusions of law, based upon the evidence and the jury's verdict, judgment for plaintiffs was entered in the sum of $2,003,480 less $50,000, the amount "deductible" under the policy.

Hartford next moved for a new trial asserting, among other things, the insufficiency of the evidence to support the jury's verdict. This motion was granted by the trial court as to this limited issue and denied as to all other issues urged. The court also denied defendant's motion for judgment notwithstanding the verdict predicated upon the grounds that (1) plaintiffs were collaterally estopped by the second degree murder conviction and (2) the evidence required a defense judgment. The trial court also denied Hartford's motion to set aside and vacate the judgment under Code of Civil Procedure section 663.

## Discussion

### I

### Collateral Estoppel

Hartford contends that plaintiffs are estopped by Lovelace's second degree murder conviction from asserting a claim of coverage against Hartford. This claim of collateral estoppel is founded upon a provision of the insurance policy[5] and Insurance Code section 533.[6]

---

Lovelace intended to shoot and harm Dr. Clemmer when he caused his death, and that Lovelace when he shot and killed Dr. Clemmer had sufficient mental capacity to know and understand what he was doing and the nature and quality of his act, and to form the mental states referred to in this paragraph.

"12. The criminal judgment rendered against Dr. Lovelace is irrelevant to any issue in this case and is inadmissible in the discretion of this court since its probative value is outweighed by prejudice pursuant to § 352."

[3]Evidence of the conviction was, over plaintiffs' objection, admitted for impeachment purposes only.

[4]The parties after conference with the trial judge agreed as to the method of proceeding in the trial court, trying certain issues to the court and trying the issue of the wilfulness of Dr. Lovelace's act before the jury.

[5]The pertinent provision of the policy provides that coverage was not applicable "to any act committed by . . . the insured with intent to cause personal injury."

[6]See footnote 1, ante.

In *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892], this court rejected the mutuality doctrine and recognized the twofold aspect of res judicata. We there pointed out that the doctrine not only bars relitigation of the same cause of action once a final determination has been made by a court of competent jurisdiction, but it also precludes a reexamination as between the parties or their privies of any issue necessarily decided if the issue is involved in any subsequent lawsuit brought on a different cause of action. (*Id.,* at p. 810.) Thus, we concluded, a party will be collaterally estopped from relitigating an issue only if (1) the issue decided in a prior adjudication is identical with that presented in the action in question; *and* (2) there was a final judgment on the merits; *and* (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication. (*Id.,* at p. 813.) This requirement of identity of parties or privity is a requirement of due process of law. (*Id.,* at p. 812; *Blonder-Tongue* v. *University Foundation* (1971) 402 U.S. 313, 329 [28 L.Ed.2d 788, 799-780, 91 S.Ct. 1434].)

Building upon the principles enunciated in *Bernhard,* this court in *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439], held that a party will be estopped from litigating an issue in a civil action where the issue had necessarily been determined by a prior criminal conviction so long as all three requirements set forth in *Bernhard* are met.

Hartford's position, simply stated, is this: Dr. Lovelace, it is urged, would be estopped from denying the willfulness of his act in killing Dr. Clemmer in any subsequent action against his insurer, that issue having been necessarily determined by the second degree murder conviction.[7] Dr. Clemmer's *survivors,* defendant argues, are in privity with Dr. Lovelace because whatever rights they have are derived from Lovelace's insurance policy, and therefore, defendant concludes, those survivors are also collaterally estopped as against Hartford from relitigating the issue of willfulness. ▮ For the reasons set forth below, however, we have concluded that the requisite privity between plaintiffs and Dr. Lovelace which would justify application of the doctrine of collateral estoppel is lacking where, although plaintiffs' rights against Hartford are based on Lovelace's insurance policy, plaintiffs' interests in litigating the issue of willfulness differed from those of Dr. Lovelace and were therefore not adequately represented by him in his prior criminal trial.

---

[7]Hartford contends that Dr. Lovelace's second degree murder conviction involves an adjudication of a willful act, citing Penal Code section 187, *People* v. *Bender* (1945) 27 Cal.2d 164 [163 P.2d 8], and *People* v. *Washington* (1965) 62 Cal.2d 777 [44 Cal.Rptr. 442,

Privity is a concept not readily susceptible of uniform definition. Traditionally it has been held to refer to an interest in the subject matter of litigation acquired after rendition of the judgment through or under one of the parties, as by inheritance, succession or purchase. (*Bernhard, supra,* 19 Cal.2d at p. 811.) The concept has also been expanded to refer to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights (*Zaragosa* v. *Craven* (1949) 33 Cal.2d 315 [202 P.2d 73, 6 A.L.R.2d 461]; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d at p. 604; *Rynsburger* v. *Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal.App.2d 269 [72 Cal.Rptr. 102]) and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel (*Lynch* v. *Glass* (1975) 44 Cal.App.3d 943 [119 Cal.Rptr. 139]; *People* v. *One 1964 Chevrolet Corvette Convertible* (1969) 274 Cal.App.2d 720, 731 [79 Cal.Rptr. 447]; *People* ex rel. *State of Cal.* v. *Drinkhouse* (1970) 4 Cal.App.3d 931, 939 [84 Cal.Rptr. 773].)

■ Notwithstanding expanded notions of privity, collateral estoppel may be applied only if due process requirements are satisfied. (*Blonder-Tongue, supra*; *Bernhard, supra*; *Dilliard* v. *McKnight* (1949) 34 Cal.2d 209, 214-215 [209 P.2d 387, 11 A.L.R.2d 835].) In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. (*Lynch* v. *Glass, supra,* at p. 948.) Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation. (*People* v. *Taylor* (1974) 12 Cal.3d 686, 695 [117 Cal.Rptr. 70, 527 P.2d 622]; see also *Teitelbaum, supra.*)

■ With these considerations in mind, we now examine the relationship between plaintiffs and Dr. Lovelace. It is urged that this relationship is one of "derivative privity" in that plaintiffs sue, inter alia, as third party

402 P.2d 130]. For the purpose of this discussion, we assume that this contention is correct.

beneficiaries of Lovelace's insurance policy, having no greater rights than would the insured under that policy, and thus are subject to the same defenses that could be asserted against the insured. In support of this proposition, Hartford relies on this court's decision in *Valladao* v. *Fireman's Fund Indem. Co.* (1939) 13 Cal.2d 322 [89 P.2d 643], where we held that in a suit by an injured third person against the tortfeasor's insurer, the insurer may raise any defense against the injured person that it could have raised against the insured. (See also *Ford* v. *Providence Washington Ins. Co.* (1957) 151 Cal.App.2d 431 [311 P.2d 930]; *Olds* v. *General Acc. Fire etc., Corp.* (1945) 67 Cal.App.2d 812 [155 P.2d 676].) A similar contention was made in *Shapiro* v. *Republic Indem. Co. of America* (1959) 52 Cal.2d 437 [341 P.2d 289]. *Shapiro* involved the issue whether the injured party plaintiffs were bound by a prior judgment in a reformation action between the insured and the insurer to which they were not parties. In *Shapiro* we observed that *Valladao* was not authority for the proposition that collateral estoppel would apply, and we concluded that the plaintiffs would not be bound by the prior reformation judgment. In reaching this conclusion, we referred to *Dransfield* v. *Citizens Casualty Co. of New York* (1950) 5 N.J. 190 [74 A.2d 304], where it was held that although the injured third party stands in the shoes of the assured, his rights were not barred by a decree voiding the policy since he was not a party to such an action and "was not in privity with the assured" (74 A.2d, *supra,* at p. 306, cited at 52 Cal.2d at p. 439). Additionally, we cited *Pharr* v. *Canal Ins. Co.* (1958) 233 S.C. 266 [104 S.E.2d 394], where it was held that a declaratory judgment of nonliability based on the insured's breach of a cooperation clause was not res judicata in a later action between the injured person and the insurer, even though the insurer had the right to raise the issue of breach of the duty of cooperation in the suit by the injured person and although the injured person would have been bound by the judgment had he been made a party to that action.

Hartford argues that *Shapiro* does not apply to preclude application of collateral estoppel based on *Valladao* where after the event giving rise to the claim the insurer has not entered into any agreement or an action, collusive or otherwise, which would defeat the rights of the injured third party. We are unconvinced that *Shapiro* should be so limited. The concept that an injured person stands in the shoes of the insured cannot be mechanically applied in all instances. (See *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674]; *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937 [132 Cal.Rptr. 424, 553 P.2d 584].) The record indicates that, after having been adjudged guilty of

second degree murder, Dr. Lovelace withdrew his plea of not guilty by reason of insanity. He may well have done so as a result of a determination on his part that the sentence to be served by him under a second degree murder conviction would be preferable to the possible consequence of his prevailing on his insanity pleas, to wit, commitment to a state mental hospital (see Pen. Code, § 1026). For this reason, it cannot be said that Lovelace had the same interests in fully litigating the issue of the willfulness of his act in killing Dr. Clemmer as do the plaintiffs herein. We therefore hold that whereas plaintiffs are subject to any defenses that Hartford would have had against Lovelace, such defenses must be proved by Hartford. Plaintiffs may not be precluded from litigating the issue of willfulness by application of the doctrine of collateral estoppel.[8]

## II

### SUFFICIENCY OF THE EVIDENCE TO SUPPORT VERDICT AND JUDGMENT THAT THE KILLING OF DR. CLEMMER WAS NOT WILLFUL—DENIAL OF MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Hartford contends that the evidence as a matter of law compels the conclusions that Dr. Lovelace was possessed of his mental faculties when he killed Dr. Clemmer, and that therefore the trial court should have granted a judgment for Hartford notwithstanding the verdict.

In *Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110-111 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282] we said: "The trial judge's power to grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict [citations]. The trial judge cannot reweigh the evidence (*Quintal* v. *Laurel Grove Hospital* (1964) 62 Cal.2d 154, 159 [141 Cal.Rptr. 577, 397 P.2d 161]), or judge the credibility of witnesses. (*Knight* v. *Contracting Engineers Co.* (1961) 194 Cal.App.2d 435, 442 [15 Cal.Rptr. 194].) If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the

---

[8]Hartford's reliance on *People* ex rel. *State of Cal.* v. *Drinkhouse, supra,* 4 Cal.App.3d 931 (collateral estoppel applied against a grantee who could have no greater rights than his grantor and cograntee) and *People* v. *One 1964 Chevrolet Corvette Convertible, supra,* 274 Cal.App.2d 720 (collateral estoppel applied against the owner of an automobile who surrendered its control to a drug offender) is misplaced. In the first instance, the holding was based upon well-settled notions of privity in the context of property law, while in the second instance the holding is grounded on a concept of privity based upon the imputation of knowledge to an entrustor. None of the indicated considerations are here applicable.

verdict should be denied. (*McCown* v. *Spencer* (1970) 8 Cal.App.3d 216, 226 [87 Cal.Rptr. 213]; *Hozz* v. *Felder* (1959) 167 Cal.App.2d 197, 200 [334 P.2d 159].) 'A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied.' (*Brandenburg* v. *Pac. Gas & Elec. Co.* (1946) 28 Cal.2d 282, 284 [169 P.2d 909].)"

■ Hartford's claim that there is no substantial evidence to support the verdict rests upon its contention that the testimony of Dr. Anselen, plaintiffs' psychiatric expert, was rendered absurd by certain internal inconsistencies, and that therefore that testimony must be disregarded. The record reflects that Dr. Anselen testified, on the one hand, that Dr. Lovelace had the mental capacity to know what he was doing and to know the nature and quality of his acts, but he also testified that Dr. Lovelace was a paranoid personality throughout his professional life, that he suffered an acute paranoid episode when Dr. Clemmer sought to terminate their professional relationship, and that Dr. Lovelace, at the time he shot Dr. Clemmer, did not have the mental capacity to deliberate and premeditate or to form the specific intent to shoot and harm the victim and did not understand the consequences of his act, being then directed by paranoid delusions.

Even if it be assumed that there are logical inconsistencies in the foregoing testimony—a matter which we need not here reach—the fact that inconsistencies may occur in the testimony of a given witness does not require that such testimony be disregarded in its entirety for the purposes of a motion for judgment notwithstanding the verdict, nor does it mean that such testimony is necessarily insufficient to support the verdict. It is for the trier of fact to consider internal inconsistencies in testimony, to resolve them if this is possible, and to determine what weight should be given to such testimony. The motion for judgment notwithstanding the verdict was properly denied.

## III

### EXCLUSION OF THE JUDGMENT OF CONVICTION AS EVIDENCE OF WILLFULNESS

■ The trial court as we have seen was properly not persuaded by the collateral estoppel theory presented by Hartford. Failing in the attempt to

so persuade the trial court, Hartford sought to introduce the record of the criminal case under Evidence Code section 1300 to prove Lovelace's willfulness.[9] However, the trial court, being of the mind that such evidence would "create a substantial danger of undue prejudice, would confuse the issues and mislead the jury," excluded the evidence (see Evid. Code, § 352). At the time of his ruling the trial judge noted that the record established there was no controversy on how the death of the victim occurred, and thus the only purpose of the evidence was to show that another jury had thought that murder had been committed. The trial court concluded that undue weight would be given by the jury to that prior judicial opinion without the evidence in the record being fairly considered. Although the conviction would appear to have been relevant and admissible under section 1300, we cannot say that the trial court abused its discretion in ruling as it did under section 352.

IV

WILLFULNESS—BURDEN OF PROOF

■ Hartford next contends that the trial court erroneously imposed upon Hartford the burden of proving that Lovelace had committed a willful act.[10] In *Executive Aviation, Inc.* v. *National Ins. Underwriters* (1971) 16 Cal.App.3d 799, 806 [94 Cal.Rptr. 347], it was held that the burden is on the insurer to bring itself within an exculpatory clause contained in an insurance policy. Hartford claims that this rule is not applicable here because the issue tendered to the jury was not based upon the exculpatory clause contained in the insurance policy, but rather upon exclusion of liability under Insurance Code section 533 (see fn. 1, *ante*). Hartford urges that this statute represents a specific articulation in the insurance field of the broad rule of public policy set forth in Civil Code section 1668,[11] and that therefore it is the insured, rather than the insurer,

---

[9]Section 1300 provides: "Evidence of a final judgment adjudging a person guilty of a crime punishable as a felony is not made inadmissible by the hearsay rule when offered in a civil action to prove any fact essential to the judgment unless the judgment is based on a plea of nolo contendere."

[10]The jury was instructed "the defendant has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issue: that the death of Dr. Clemmer was caused by a willful act of Dr. Lovelace. The issue will be presented to you by a verdict containing the following question: 'Was the death of Dr. Clemmer caused by a willful act of Dr. Lovelace?' . . ."

[11]Section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

who should bear the burden of demonstrating that his acts were not willful within its meaning. The provisions of Insurance Code section 533, however, have been held to be the equivalent of an exclusionary or exculpatory clause. (See *Evans* v. *Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537, 540 [122 Cal.Rptr. 680]; *Nuffer* v. *Insurance Co. of North America* (1965) 236 Cal.App.2d 349, 356 [45 Cal.Rptr. 918].) "[T]he burden of bringing itself within any exculpatory clause contained in the policy is on the insurer [citation]." (*Executive Aviation, Inc.* v. *National Ins. Underwriters, supra,* 16 Cal.App.3d 799, 806; see also *American Home Assurance Co.* v. *Essy* (1960) 179 Cal.App.2d 19, 23 [3 Cal.Rptr. 586].)

Placing the burden on Hartford to show that Lovelace's act was willful is also consistent with Evidence Code section 520. That section provides: "The party claiming that a person is guilty of crime or wrongdoing has the burden of proof on that issue." (See *Lane & Pyron, Inc.* v. *Gibbs* (1968) 266 Cal.App.2d 61, 67 [71 Cal.Rptr. 817].)

Hartford also attempts to sustain its position by asserting that although the insurer has the burden of bringing itself within an exculpatory clause contained in the insurance policy, this is not the case when the "exclusion" defines the scope of insurance provided by that policy, citing *Zuckerman* v. *Underwriters at Lloyd's* (1954) 42 Cal.2d 460 [267 P.2d 777].

The *Zuckerman* case, however, is clearly distinguishable. The policies there involved insured against " 'accidental bodily injury [including "bodily injury which shall occasion death" as defined in the policies] . . . .' " (42 Cal.2d at p. 473.) We held that the jury was properly instructed that plaintiffs, rather than the insurer, had the burden of showing that the death in question occurred by accidental means rather than by intentional self-injury, and that a part of this burden included the task of disproving intentional self-injury. The fact that an exclusion specifically withheld coverage for intentional self-injury, we held, did not operate to shift that burden. "The burden of establishing suicide, therefore, should not have been put on the insurer [as the plaintiffs had contended], as the provision as to death from that cause was not a condition subsequent but merely definitive of the precise risk assumed." (*Id.,* at p. 474.) In the instant case, on the other hand, coverage agreement which is the basis of the insurance provided speaks in general, comprehensive terms, the insurer agreeing to indemnify the insured "for all sums which the insured shall become legally obligated to pay as damages and expenses, . . . because of personal injury or property damage to which

this coverage applies, occurring during the policy period." Clearly it cannot be said that the exclusion here in question, which appears with six others in a succeeding paragraph of the policy, was "definitive of the precise risk assumed" within the meaning of *Zuckerman.* In short, the exclusion here in question is a true exclusion within the meaning of the *Executive Aviation* case, not a definitional redundancy as was involved in *Zuckerman.*

V

### Dr. Lovelace's Failure to Notify the Insurer of the Wrongful Death Action, His Nontender of Defense and His Failure to Cooperate as a Defense in This Action.

The trial court found that within a week of the killing of Dr. Clemmer, Hartford was aware of the event. The court also found that Hartford was never informed by Dr. Lovelace that he had been served with summons and complaint in the action brought against him by plaintiffs, that the defense was not tendered to Hartford, and that Hartford was not advised by Dr. Lovelace of the request for entry of default served on Dr. Lovelace in the wrongful death case. The day before the hearing on the request, Hartford was notified of it by plaintiffs' attorneys. This was Hartford's first knowledge of the lawsuit. Disclaimer of coverage was conveyed to Dr. Lovelace's counsel by a Hartford claims representative approximately two weeks after the hearing. The trial court concluded that Hartford could not claim the defense of lack of notice, of tender of defense, or of cooperation because by denying coverage it, as a matter of law, had waived any claim based thereon, and that in any event Hartford was not prejudiced.

On this appeal, Hartford refers to cases cited in its collateral estoppel argument—i.e., *Valladao* v. *Fireman's Fund Indem. Co., supra,* 13 Cal.2d 322; *Sumida* v. *Pacific Auto. Ins. Co.* (1942) 51 Cal.App.2d 472 [125 P.2d 87], and *Sears* v. *Illinois Indemnity Co.* (1932) 121 Cal.App. 211 [9 P.2d 245]—claiming that since it was entitled to assert the same defense against the Clemmers as it would have against Dr. Lovelace, it was prejudicial error to deny it the indicated defense.

Plaintiffs correctly point out, however, that the defense of lack of notice, tender of defense and cooperation is not available here because Hartford has not shown prejudice. In *Campbell* v. *Allstate Ins. Co.* (1963)

60 Cal.2d 303, at pages 305 to 307 [32 Cal.Rptr. 827, 384 P.2d 155], this court thoroughly explored this area of the law, resolving any question that may have heretofore existed (see *Valladao* v. *Fireman's Fund Indem. Co., supra,* 13 Cal.2d 322, 330 et seq.). We there stated: "The right of an injured party to sue an insurer on the policy after obtaining judgment against the insured is established by statute. (Ins. Code, § 11580.) An insurer may assert defenses based upon a breach by the insured of a condition of the policy such as a cooperation clause, but the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby. [Citations.] Similarly, it has been held that prejudice must be shown with respect to breach of notice clause. [Citations.] We are satisfied that the requirement of prejudice set forth in these decisions is proper. The cases of *Valladao* v. *Fireman's Fund Indem. Co.* 13 Cal.2d 322, 331 [89 P.2d 643] and *Purefoy* v. *Pacific Automobile Indem. Exch.,* 5 Cal.2d 81, 87 [53 P.2d 155], relied upon by defendant, are not contrary to the views expressed herein. In each of those cases the court found that prejudice had been established by the facts proved and that it was therefore unnecessary to determine whether a showing of prejudice should be required. [¶] The burden of proving that a breach of a cooperation clause resulted in prejudice is on the insurer. [Citations.] . . . [¶] In reaching its decision, the trial court properly determined that it was bound by *Margellini* v. *Pacific Automobile Ins. Co.,* 33 Cal.App.2d 93, 99-100 [91 P.2d 136], where it was reasoned that prejudice 'must be presumed' as a matter of law from the breach of a cooperation clause by conduct similar to that involved here. We have concluded, however, that this reasoning is unsound and that *Margellini* should be disapproved. No statutory basis for the presumption of prejudice has been cited or found, and presumptions should not be created judicially unless there are compelling reasons for doing so. Although it may be difficult for an insurer to prove prejudice in some situations, it ordinarily would be at least as difficult for the injured person to prove a lack of prejudice, which involves proof of a negative. The presumption would not be in keeping with the public policy of this state to provide compensation for those negligently injured in automobile accidents through no fault of their own (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.,* 58 Cal.2d 142, 153-154 [23 Cal.Rptr. 592, 373 P.2d 640]; *Wildman* v. *Government Employees Ins. Co.,* 48 Cal.2d 31, 39 [307 P.2d 359]), and we are of the view that a judicially created presumption of prejudice, whether conclusive or rebuttable, is unwarranted (in accord: *Allen* v. *Cheatum, supra,* 351 Mich. 585). [¶] *Margellini* v. *Pacific Automobile Ins. Co.,* 33 Cal.App.2d 93 [91 P.2d 136], is disapproved insofar as it is inconsistent with the views we have expressed regarding the impropriety of a presumption of prejudice."

We conclude that Hartford has failed to make the requisite showing of prejudice. At no time prior to trial did it plead or assert the defense here in question, raising the matter for the first time in its memorandum of points and authorities in support of second motion for summary judgment, which was filed almost six months after the complaint. Even at that time Hartford expressly disclaimed any intention of urging lack of notice and tender of defense in the wrongful death action as a complete defense to the Clemmers' action. "ALL HARTFORD seeks to accomplish by asserting lack of notice of pendency of the wrongful death action," the memorandum stated, "is to prevent plaintiff from asserting that HARTFORD is foreclosed from raising the issue of coverage." It was only at trial that Hartford sought to raise the matter as a defense rather than as a response to plaintiffs' argument of foreclosure. Its offer of proof in this respect was rejected after the Clemmers had objected on the grounds, inter alia, that the offer was outside the scope of the pleadings and that in any event Hartford had not offered to prove prejudice through showing that it would have defended the action if there had been notice and tender. Hartford's motion to amend the answer was denied at this time, although a posttrial amendment offered during the hearings on the findings of fact and conclusions of law was granted, the court then indicating that its former ruling had been based on Hartford's apparent unwillingness to suggest that it would have defended the action had tender been made but pointing out that "no harm" would come of allowing the amendment for formal purposes.

The fundamental defect in Hartford's position here is that it has at no time suggested that, in the event that a timely tender of the defense of the wrongful death action had been made, it would have undertaken the defense. The record clearly suggests to the contrary. In these circumstances, applying the rule of the *Campbell* case, we must conclude that Hartford has failed to show that it sustained substantial prejudice as a result of the insured's failure to provide it with notice and tender.[12] Accordingly, its defense based upon this failure was properly rejected.

Finally, we point out that the trial court's ruling herein that Hartford was not foreclosed from litigating the issue of willfulness vis-à-vis

---

[12]Hartford's sole suggestion before the trial court—and before this court—concerning the manner in which it had suffered prejudice by the failure of notice and tender was couched in ipso facto terms: "Surely there is prejudice if all of a sudden somebody is going to come after you for two million-plus dollars, in a situation where you have never been notified by anybody about the matter until after a default was taken." What this argument fails to recognize, of course, is that prejudice is not shown simply by displaying end results: the probability that such results could or would have been avoided absent the claimed default or error must also be explored.

negligence—which ruling we hold to have been correct—renders the present contention academic. If in fact Hartford suffered any prejudice through losing the opportunity to defend in the wrongful death action, such prejudice amounted to no more than the necessity that it demonstrate in the instant action what it claims it would have demonstrated in the former proceeding. Such prejudice, we believe, would clearly be de minimis.

## VI

### HARTFORD'S OPPORTUNITY TO LITIGATE
### THE DAMAGES

■ The trial court held Hartford bound by the amount of the judgment obtained by plaintiffs against Dr. Lovelace. Hartford argues that since it had no opportunity to litigate the issues in the suit brought against Dr. Lovelace by the plaintiffs, it cannot be bound by the amount of the judgment obtained therein. We disagree.

■ In *Ford* v. *Providence Washington Ins. Co., supra*, 151 Cal.App.2d 431, it is stated to be the general rule that "an insurer who has had an opportunity to defend is bound by the judgment against its insured as to all issues which were litigated in the action against the insured." (151 Cal.App.2d at p. 436.) The operation of this rule, the court goes on to state, "depends primarily upon notice to the insurer of the pendency of the action." (*Id.*, at p. 437.) These statements appear to accurately state the general rules governing these cases. (See *Bonfils* v. *Pacific Auto Ins. Co.* (1958) 165 Cal.App.2d 152, 161 [331 P.2d 766]; see generally, 39 Cal.Jur.3d, Insurance Contracts, § 431, pp. 733-734.)

■ We are persuaded, nevertheless, that the insurer herein received the kind of "notice . . . of the pendency of the [wrongful death] action" which should result in its being bound by the amount of damages found in that action to have been sustained by plaintiffs. We have indicated that Hartford was found by the trial court to have been aware of the shooting incident within a week of its occurrence, although its first notice of the pendency of the wrongful death action occurred when, on the day before the hearing on default judgment following Lovelace's default, it was notified of that hearing by a telephone call and telegram from plaintiffs' attorney. Within a few weeks thereafter Hartford directed a letter to Lovelace's attorney in which it disclaimed coverage and asked to be advised of Lovelace's intentions, but it at no time sought to have the

default judgment set aside on any ground. Even if it be conceded that the insurer had little opportunity to make an intelligent entry into the case by way of intervention or otherwise when, on the day before the default hearing, it first received notice of the action, it nevertheless had an opportunity for a reasonable period, up to six months thereafter, to assume control and management of the suit by way of an application for relief pursuant to Code of Civil Procedure section 473. Its failure to take advantage of this opportunity requires that the instant contention be resolved against it.

Code of Civil Procedure section 473 provides in part: "The court may, upon such terms as may be just, relieve *a party or his legal representative* from a judgment . . . taken against him through his mistake, inadvertence, surprise or excusable neglect." (Italics added.) The term "legal representative" has been interpreted with considerable liberality to permit one who would not normally be considered a "representative" of a party but has a sufficient interest in the action to maintain the motion. (See, e.g., *Nuckolls* v. *Bank of California* (1937) 10 Cal.2d 266, 272 [61 P.2d 927] (trustee in bankruptcy as successor of bankrupt party); *Trumpler* v. *Trumpler* (1899) 123 Cal. 248, 253 [55 P. 1008] (successor in interest to property); *Skolsky* v. *Electronovision Productions, Inc.* (1967) 254 Cal.App.2d 246, 248 [62 Cal.Rptr. 91] (person who obtained bond to release attachment of defendant's property in which he had contractual rights); *Guardianship of Levy* (1955) 137 Cal.App.2d 237, 244 [290 P.2d 320] (person contesting appointment of another as guardian and seeking appointment himself); *Estate of Seaman* (1921) 51 Cal.App. 409, 411 [196 P. 928] (creditor of estate).) The *Skolsky* case is particularly instructive on this point. There the defendant gave a bond to release an attachment after Magna, a nonparty who had certain contractual rights respecting the property, provided the surety with a substantial letter of credit as security. The defendant then defaulted. The Court of Appeal, relying on our decisions in *Johnson* v. *Hayes Cal Builders, Inc.* (1963) 60 Cal.2d 572 [35 Cal.Rptr. 618, 387 P.2d 394], *Drinkhouse* v. *Van Ness* (1927) 202 Cal. 359 [260 P. 869], and *Elliott* v. *Superior Court* (1904) 144 Cal. 501 [77 P. 1109], held that Magna had a sufficient interest in the subject matter of the action to bring a motion to set aside the default judgment under section 473. Quoting from *Elliott* the court stated: " 'There is in fact another plain, speedy, and adequate remedy allowed by our practice to one whose rights or interests are injuriously affected by the judgment or by any appealable order to a court given or made in an action or proceeding to which he is not a party. He may make himself a party by moving to set aside such judgment or order, and if his motion is denied may, on appeal

from that order, have the proceeding of which he complains reviewed not only for excess of jurisdiction but for error.' " (254 Cal.App.2d at p. 249.)

The standing of Hartford to move to set aside the default judgment which it might otherwise be required to satisfy is therefore clear. It would appear, moreover, that had it sought to set aside the judgment it would have had little difficulty making out a case for a "mistake, inadvertence, surprise or excusable neglect." (See generally 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, §§ 126-147, pp. 3702-3703.)

Thus, under the circumstances, we hold that Hartford had ample opportunity to seek an adjudication of the damages. It knew or should have known that judgment against its insured would form the basis for a later claim against it under Insurance Code section 11580. Instead of protecting itself by means of a section 473 motion it chose to remain silent, resting on its claim of noncoverage. Having failed to pursue remedies thus available to it, it cannot now claim prejudice or lack of opportunity to litigate damages.

## VII

### HARTFORD'S OTHER CONTENTIONS

Hartford claims that the trial court's giving of a formula instruction on the issue of willfulness was prejudicial error as was its refusal to give Hartford's instruction on that issue.

The issue of willfulness was submitted to the jury through a verdict form posing the following question: "Was the death of Dr. Clemmer caused by a willful act of Dr. Lovelace?" The jury, to aid it in answering this question, was instructed as follows: "If you find by a preponderance of the evidence that Dr. Lovelace had the mental capacity to intend to shoot and harm Dr. Clemmer when he caused his death, as well as the mental capacity to govern his own conduct, you will answer this question 'Yes'. [¶] If on the other hand, you find that at that time Dr. Lovelace was suffering from a mental disease or defect of such magnitude that he could not form the mental state I have just mentioned, then you will answer the question 'No'." It is contended that the giving of the foregoing instruc-

tion, and the refusal to give other instructions proffered by Hartford on the issue,[13] resulted in prejudicial error.

 Hartford urges that the term "willful" as used in the question presented to the jury should have been defined not in terms of Dr. Lovelace's mental capacity and mental state (as the instruction given defined it) but rather in terms of conduct "more blameworthy than the sort of misconduct involved in ordinary negligence" (as Hartford's proffered instruction defined it—see fn. 13, *ante*). The instruction given, Hartford asserts, had the effect of requiring the jury to find the existence of what amounted to a specific intent to kill in order to find willfulness. It is clear, however, that this argument not only ignores the specific language of the instruction—which speaks in terms of intent to "shoot and harm," not in terms of intent to kill—but refuses to recognize the clear line of authority in this state to the effect that even an act which is "intentional" or "willful" within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a "preconceived design to inflict injury." (*Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 783 [8 Cal.Rptr. 665]; see also *Meyer* v. *Pacific Employers Ins. Co.* (1965) 233 Cal.App.2d 321, 327 [43 Cal.Rptr. 542]; see generally *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273-274, fn. 12 [54 Cal.Rptr. 104, 419 P.2d 168], and cases there cited.) The instruction given by the trial court simply applied this principle to a situation in which the actor's capacity to harbor the requisite "design" was placed in issue through evidence bearing upon his mental state. There was no error in this respect.[14]

---

[13] The proffered instructions provided:

"An act is a 'willful act' within the meaning of the question you are to decide, and within the meaning of my instructions, if the act is more blameworthy than the sort of misconduct involved in ordinary negligence, that is, if the act was performed with an improper motive or purpose. . . .

"You are instructed that a negligent act—in contrast to a willful act—is the doing of something which a reasonably prudent person would not do under circumstances similar to those shown by the evidence. It is the failure to use ordinary or reasonable care. Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to others under circumstances similar to those shown by the evidence.

"On the other hand, a person willfully harms another when he knows and understands what he is doing and has the purpose of intending to harm him.

"Thus, for example, when a pedestrian is struck by an automobile that is carelessly driven, the injury is the result of negligence and not willfulness. If, however, the driver intentionally struck [the] pedestrian, the act is willful."

[14] For cases in other jurisdictions considering the mental condition of the actor in determining the willfulness of his act for insurance purposes, see, e.g., *Vanguard Insurance Co.* v. *Cantrell* (1973) 18 Ariz.App. 486 [503 P.2d 962]; *Burd* v. *Sussex Mutual Insurance Co.* (1970) 56 N.J. 383 [267 A.2d 7]; *Ruvulo* v. *American Cas. Co.* (1963) 39 N.J. 490 [189 A.2d 204]; see also Annot. (1965) 2 A.L.R.3d 1238, 1243-1245.

Hartford's final argument—that it was entitled to have the judgment set aside and a new judgment entered pursuant to Code of Civil Procedure section 663 because the findings of the trial court compel a determination that plaintiffs are precluded from litigating the issue of willfulness—is but a reassertion of its collateral estoppel argument couched in procedural language, and we need not consider it further here.

VIII

CONTENTIONS OF PLAINTIFFS REGARDING
THE PROPRIETY OF GRANTING HARTFORD'S
MOTION FOR NEW TRIAL.

Plaintiffs contend that the specifications given by the trial court in support of its order granting a new trial were insufficient. Code of Civil Procedure section 657 provides: "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated." Here the trial judge filed a five-page memorandum setting forth his reasons for the new trial. Specifically he dealt with Dr. Lovelace's state of mind and raised substantial questions concerning the testimony of the experts relating thereto, particularly that of Dr. Anselen compared with that of Dr. DiNolfo, stating that he "reject[ed] the opinions of Dr. Anselen, which would exonerate Dr. Lovelace from the ability to know and recognize the nature of his act and to control his conduct, as being absurd. Aside from these ill-founded opinions, there is no support for the jury's finding. I am satisfied that if the action had been between two individuals, rather than a widow and fatherless child against an insurance company, a different result would have been reached by the jury."

Specifications for new trial are sufficient if they make a record sufficiently precise to permit meaningful review. (*Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 363 [90 Cal.Rptr. 592, 475 P.2d 864].) Specifications are insufficient if simply couched in the form of conclusions or statement of ultimate fact. (*Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 698 [106 Cal.Rptr. 1, 505 P.2d 193].)

Here plaintiffs' attack is basically one of factual disagreement with the court's reasons for disbelieving evidence of Dr. Lovelace's lack of

willfulness. Such a factual disagreement is not adequate to show that the specifications for new trial were insufficient. The record reflects that detailed reasons were given for the trial court's decision and that the specifications reflected deliberation on the part of the trial judge such as to give this court a meaningful picture of what prompted the new trial order. The statutory purposes have thus been served. (Cf. *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 931-933 [148 Cal.Rptr. 389, 582 P.2d 980].)

█ It is next contended that a trial court's power to grant a new trial on the ground of insufficiency of the evidence (Code Civ. Proc., § 657, subd. 6) deprives plaintiffs of their right to jury trial guaranteed by article I, section 16 of the California Constitution. This attack, however, comes too late in the jurisprudential day. It has long been held that the right to jury trial is not violated by the power in question. (*Ingraham* v. *Weidler* (1903) 139 Cal. 588 [73 P. 415]; *Estate of Bainbridge* (1915) 169 Cal. 166 [146 P. 427].) More recently we again passed upon this point in *Dorsey* v. *Barba* (1952) 38 Cal.2d 350, 358 [240 P.2d 604].

We also find wanting plaintiffs' claim that Code of Civil Procedure section 657 violates due process (Cal. Const., art. I, § 7; U.S. Const., Amend. XIV, § 1). It is but another statement of their jury trial argument discussed above, and for that reason we discuss it no further.

Finally, plaintiffs argue that in any event the willfulness of Dr. Lovelace was immaterial and irrelevant and that judgment should have been entered in plaintiffs' favor because (1) Hartford breached its duty to defend Dr. Lovelace in the wrongful death action, and (2) Dr. Lovelace's willfulness, if any, is inapplicable to innocent third parties.

█ Even assuming that the failure to defend Dr. Lovelace was unjustified and that issues relating to coverage could be litigated in the action against Dr. Lovelace, plaintiffs cannot prevail in this contention. We held in *Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d 937, 943-944, that in the absence of an assignment a third party claimant cannot bring an action upon a duty owed to the insured by the insurer. Plaintiffs, standing in place of the injured party, can claim no duty owing to Dr. Lovelace to defend, no assignment of Dr. Lovelace's right being claimed.

█ Plaintiffs' contention that innocent victims of intentional torts should be able to recover from an insurer without regard to the willfulness of the insured clearly runs contrary to the policy expressed in

Insurance Code section 533, the subject of discussion at the start of this opinion. *Nuffer* v. *Insurance Co. of North America, supra,* 236 Cal.App.2d 349 is cited by plaintiffs to demonstrate that an innocent third party may recover for the action of the insured's agent. Here, however, we are not concerned with an action of Dr. Lovelace's agent, but with Dr. Lovelace's own act. Hartford may not be held liable to plaintiffs for any willful act of Dr. Lovelace.

## CONCLUSION

We conclude on the basis of the foregoing that the orders here subject to appeal, i.e., the orders granting a limited new trial and denying judgment notwithstanding the verdict, must be affirmed; that the protective cross-appeal, having become moot following affirmance of the order granting a limited new trial, must be dismissed; that the purported appeals from the orders denying the motion to set aside and vacate the judgment and enter a new and different judgment and the motion for a new trial on all issues must also be dismissed, said orders being nonappealable; and that that portion of the judgment which is not affected by the order granting a limited new trial must be affirmed.

Accordingly, the order entitled ruling on submitted matters, dated and entered in the minutes June 11, 1975, as amended nunc pro tunc by the order dated and entered in the minutes June 18, 1975, insofar as it constitutes an order granting a limited new trial, is affirmed. The same order as amended, insofar as it constitutes an order denying defendant's motion for judgment notwithstanding the verdict, is affirmed. That portion of the judgment filed April 24, 1975, and entered April 25, 1975, which is not vacated and set aside by the aforesaid order as amended is affirmed. The protective cross-appeal filed by defendant July 3, 1975, and defendant's purported appeals from the aforesaid order as amended insofar as it constitutes an order denying defendant's motion to set aside and vacate the judgment and enter a new and different judgment and an order denying defendant's motion for a new trial on all issues are, and each of them is, dismissed. The parties shall bear their own costs on appeal.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.

The petition of the defendant and appellant for a rehearing was denied January 17, 1979, and the opinion was modified to read as printed above.