Filed 6/10/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B304853 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA150629) |
| v. | |
| JESSE QUINCY COLLINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Henry J. Hall, Judge.  Reversed and remanded with directions.

Jonathan Soglin and Megan Hailey-Dunsheath, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan

Pithey, Assistant Attorney General, Paul M. Roadarmel Jr., Stephanie A. Miyoshi, and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　\*　　\*

CALCRIM No. 1600 is the pattern jury instruction for robbery. Among the other elements of robbery, the instruction requires the jury to find that "[t]he defendant used force or fear to take . . . property [from a person's immediate possession] or to prevent the person [from whom the property is taken] from resisting." (CALCRIM No. 1600.) It defines "fear" as "fear of []injury to the person himself or herself" or "immediate injury to someone else present during the incident or to that person's property." (*Ibid*.) Critically, CALCRIM No. 1600 does *not* specify whether the jury must find that (1) the person from whom the property is taken—that is, the victim—was *actually, subjectively* in fear, or (2) an *objective,* reasonable person in the same circumstances would have been in fear. In our view, the pattern jury instruction should so specify.

This case illustrates why. Here, the prosecutor in closing argument repeatedly told the jury that "[t]he law is an objective standard" and that it did not "matter if anybody is afraid." However, the law has for decades required proof of the victim's actual, subjective fear. (E.g., *People v. Montalvo* (2019) 36 Cal.App.5th 597, 612 (*Montalvo*); *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709, fn. 2 (*Mungia*).) Because the prosecutor misstated the law, because the victim repeatedly denied being actually afraid, because CALCRIM No. 1600 does not speak to this issue, and because the trial court rejected defendant's entreaty to give a supplemental instruction in favor of letting the

2

jury "sort that out," we are compelled to reverse the defendant's robbery conviction. However, because there was substantial evidence to sustain a finding of guilt, we also remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Around 6:00 p.m. on May 2, 2019, Jesse Quincy Collins (defendant) walked into a Walgreens in South Gate holding an empty blue bag. Defendant asked a store employee where he could find the AXE deodorant. He went to the aisle to which he was directed, knelt down, and started to "stuff[]" $128 worth of deodorant and shaving supplies into his bag.

The same employee who had answered defendant's question saw what he was doing and alerted the store's assistant manager, Amir Hasan (Hasan).

Hasan approached defendant, who rose to stand and turned to face Hasan after Hasan said, "Excuse me." As they stood arm's length (that is, approximately three feet apart), Hasan "quietly" and "discreetly" informed defendant that he should either pay for those items or place them back on the shelves. Hasan was trying not to make a scene. Defendant responded by asking Hasan if he could "let [defendant] take [the items]," and Hasan replied, "No."

Upon hearing this answer, defendant extended his arm toward Hasan to push Hasan out of his way. Hasan took one step back to avoid being touched, and firmly told defendant, "Don't touch me."

Defendant then reached into his pants pocket and pulled out a folding knife that was already opened. Defendant kept the knife in his palm, but made it visible to Hasan, which Hasan

3

viewed as communicating: "This is what I got and you all ain't going to be able to do nothing."

Upon seeing the knife, Hasan took another step back from defendant and allowed defendant to exit the store with the bag full of merchandise and without paying for it.

## II.    Procedural Background

The People charged defendant with second degree robbery (Pen. Code, § 211),[1] and alleged that he "personally used a deadly or dangerous weapon" (namely, a knife) (§ 12022, subd. (b)(1)). The People further alleged that defendant's 2014 conviction for robbery, his 2009 conviction for assault with a deadly weapon, and his 2000 conviction for assault with a deadly weapon constituted "strikes" within the meaning of our Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)) as well as prior serious felonies (§ 667, subd. (a)).  The People additionally alleged that defendant had served five prior prison terms.  (§ 667.5, subd. (b).)

The matter proceeded to a jury trial.  The jury convicted defendant of robbery and found the weapon allegation to be true. After a jury waiver, the court conducted a trial on the prior conviction allegations and found them to be true.

The trial court sentenced defendant to prison for 15 years. Specifically, the court imposed a base sentence of 10 years (comprised of a high-end sentence of five years, doubled due to one prior strike) plus five years for a prior serious felony conviction.  In imposing this sentence, the court dismissed two strike allegations, dismissed two prior serious felony allegations, dismissed the prior prison term allegations, and dismissed the

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

4

weapon enhancement. The court did so because it viewed the case as an "aggravated shoplifting."

Defendant filed this timely appeal.

## DISCUSSION

Defendant raises six challenges on appeal. We need only reach two of them—namely, whether the prosecutor erred by misstating the law regarding the "fear" element in closing argument and whether substantial evidence supports the "fear" element had this error not occurred. In light of our resolution of these issues, we have no occasion to reach the remaining issues.

## I. Prosecutorial Error

### A. *Pertinent facts*

At the trial, Hasan repeatedly testified that he was not afraid when defendant pulled out the knife, that he "didn't feel threatened," and that he "had no fear." This was different from Hasan's testimony at the preliminary hearing, where Hasan testified that "of course" he "fel[t] threatened when [defendant] pulled out the knife." The jury heard this preliminary hearing testimony.

Prior to closing arguments, the trial court, using the standard CALCRIM No. 1600 instruction, instructed the jury that defendant was guilty of robbery only if the People proved six elements, including the element that "[t]he defendant used force or fear to take . . . property [from the victim or in the victim's immediate presence] or to prevent the person [that is, the victim] from resisting." The court further instructed the jury that "*[f]ear*, as used here, means fear of injury to the person [that is, the victim] himself or herself or immediate injury to someone else present during the incident or to that person's property."

5

In his initial closing argument, the prosecutor encouraged the jury to credit Hasan's preliminary hearing testimony about being in fear over his trial testimony because Hasan's "actions tell you when he steps back, he [was actually] threatened by the presence of [the] knife."

In his rebuttal argument, the prosecutor shifted gears and argued that whether Hasan was actually afraid did not matter at all:

> *"[the defense attorney] was trying to say that Mr. Hasan has to be the one that is afraid. That is not the law. The law is an objective standard.* [¶] Did someone do something that is an act of force or fear? Yes. The defendant pulled out a knife and displayed it and brandished it. *It doesn't matter if anybody is afraid, feared or not."*

(Italics added.)

Defendant objected that this "misstate[d] the law," and the court responded by instructing the jury that "[t]he law is stated in the jury instructions" and that the jury was "to follow the law as it is stated in the instructions."

> Immediately thereafter, the prosecutor urged the jury to *"[l]ook at the instructions, if you do an act of force or fear, it is an objective standard.* You don't get a break because you pointed a gun at an MMA [mixed martial arts] fighter, for example, and he is not scared in the middle of a robbery. That would be ridiculous."

(Italics added.) Defendant again objected, but the trial court overruled the objection.

At the conclusion of the prosecutor's rebuttal argument, defendant implored the court to give a supplemental instruction

clarifying that the victim's fear must be subjective. The trial court refused, responding that the "jury instruction handling that [was] just fine" and that "it will be up to [the jury] to sort that out."

### B. *Pertinent law*

#### 1. *On prosecutorial error*

A prosecutor's conduct during a criminal trial violates the federal Constitution if it is "'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process'" and violates the California Constitution if it "involves "'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"' [Citations.]" (*People v. Peoples* (2016) 62 Cal.4th 718, 792 (*Peoples*); accord, *People v. Rivera* (2019) 7 Cal.5th 306, 333-334 (*Rivera*).) Where, as here, the prosecutor is alleged to have misstated the law to the jury, this constitutes error only if (1) the prosecutor misstated the law, and (2) there is "'a reasonable likelihood that the jury understood or applied the [prosecutor's remarks] in an improper or erroneous manner.' [Citation]." (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*); *Rivera*, at p. 334.) Although we generally review claims of prosecutorial error for an abuse of discretion (*Peoples*, at pp. 792-793), we independently examine what the law is (*People v. Bryant* (2014) 60 Cal.4th 335, 370) and "objective[ly]" examine how a "reasonable juror" would likely interpret the prosecutor's remarks (*People v. Tully* (2012) 54 Cal.4th 952, 1043; *People v. Barnett* (1998) 17 Cal.4th 1044, 1133), bearing in mind that "'we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]'" (*Centeno*, at p. 667).

##### 2. *On robbery*

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211; *People v. Jackson* (2016) 1 Cal.5th 269, 343.)  In this context, fear means "'sufficient fear to cause the victim to comply with the unlawful demand for his property.'" (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774 (*Morehead*).)  The defendant need not cause "extreme" fear (*id.* at p. 775); he need only cause enough fear to "facilitate [his] taking of the property" (*People v. Mullins* (2018) 19 Cal.App.5th 594, 604 (*Mullins*)).  This fear may be caused by express threats, by the display of a weapon, or by intimidation alone.  (*Morehead*, at p. 775; *Mullins*, at p. 604; *People v. Flynn* (2000) 77 Cal.App.4th 766, 771.)  What is well settled, however, is that the People must prove that "the victim was in fact afraid"; in other words, what matters is whether the victim in this case was *subjectively* in fear, not whether a hypothetical and objective "reasonable person" standing in the victim's shoes would have been afraid.  (*Montalvo, supra*, 36 Cal.App.5th at p. 612; *Mullins*, at p. 604; *People v. Anderson* (2007) 152 Cal.App.4th 919, 946; *People v. Cuevas* (2001) 89 Cal.App.4th 689, 698; *People v. Davison* (1995) 32 Cal.App.4th 206, 212; *Mungia, supra*, 234 Cal.App.3d at p. 1709, fn. 2.)  The victim's subjective fear may be proven (1) directly, through the victim's statements about his or her state of mind, or (2) circumstantially, by "infer[ing the victim's actual fear] from the circumstances in which the property [was] taken." (*Morehead*, at p. 775; *People v. Holt* (1997) 15 Cal.4th 619, 690.)

**C.** *Analysis*

The prosecutor committed error in this case. As the People all but concede on appeal, the prosecutor misstated the law by repeatedly telling the jury that "[t]he law" uses an "objective standard" for evaluating fear, when the law has instead uniformly adopted a subjective standard. There is also more than a "'reasonable likelihood'" that the jury understood the prosecutor's remarks "'in an improper or erroneous manner.'" (*Centeno, supra,* 60 Cal.4th at p. 667.) That is because the prosecutor effectively exploited the ambiguity in the CALCRIM No. 1600 instruction as to whether the "fear" must be subjective or objective. As noted above, the instruction defines "fear" as "fear of []injury to the [victim]" but does not specify whether the victim must himself actually, subjectively be afraid or whether it will suffice if an objective person in the victim's shoes would have been afraid. The prosecutor's repeated assertions that "[t]he law" uses an objective standard were not contradicted—let alone refuted—by the CALCRIM instruction. To make matters worse, after defendant's first objection and the trial court's admonition to the jury to "follow the law as it is stated in the instructions," the prosecutor explicitly capitalized on the ambiguity in CALCRIM No. 1600 by arguing that the "instructions" set forth "an objective standard" and by arguing that a subjective standard would be "ridiculous." On these facts, it is reasonably likely that the jury construed the prosecutor's legally incorrect remarks as fleshing out the skeletal jury instruction on the nature of the fear that must be proven.

The People respond with two arguments. First, the People argue that the prosecutor had a viable reason for thinking that "objective" fear was the standard. But this is doubly irrelevant:

The fact that the prosecutor may have had a reason for misstating the law does not somehow negate the fact that he misstated the law, and a prosecutor's good or bad faith is in any event irrelevant to claims of prosecutorial error (*Centeno, supra,* 60 Cal.4th at p. 666). Second, the People urge that it is not reasonably likely that the jury understood the prosecutor's remarks as modifying the jury instructions because the trial court, in response to defendant's first objection, referred the jury to those instructions, because the jury was also instructed that the argument of the lawyers was not evidence, and because jurors are presumed to follow the instructions. Although a trial court's admonition directing the jury to follow an instruction that "runs counter" to an argument made by counsel can obviate the deleterious effect of that argument (e.g., *People v. Osband* (1996) 13 Cal.4th 622, 717 (*Osband*)), this is of no aid here because the CALCRIM instruction defining fear was silent as to the type of fear (subjective versus objective) that must be proven, and thus was consistent with the prosecutor's legally incorrect argument; the instruction certainly did not "run[] counter" to it.

### D. *Prejudice*

In evaluating whether prosecutorial error is prejudicial, the standard for prejudice depends on whether the error violates the federal Constitution or the California Constitution; if it is the former, the error mandates reversal unless it is "'harmless beyond a reasonable doubt'"; if it is the latter, the error mandates reversal "if there [is] a 'reasonable likelihood of a more favorable verdict in the absence of the challenged conduct.'" (*Rivera, supra,* 7 Cal.5th at p. 334, quoting *People v. Cook* (2006) 39 Cal.4th 566, 608.) In evaluating the degree of prejudice arising from a prosecutor's misstatements of the law under either standard,

courts look to (1) whether the misstatements were fleeting or more pervasive (*People v. Cortez* (2016) 63 Cal.4th 101, 133-134; *People v. Otero* (2012) 210 Cal.App.4th 865, 873 (*Otero*); (2) whether the evidence of the defendant's guilt on the issue affected by the misstatement was close or overwhelming (*People v. Fayed* (2020) 9 Cal.5th 147, 205; *Otero*, at pp. 873-874; *People v. Bryden* (1998) 63 Cal.App.4th 159, 182); (3) whether other jury instructions obviated the effect of the error (*Osband, supra,* 13 Cal.4th at p. 717; *Otero*, at p. 873); and (4) whether the jury made other findings that necessarily indicate that the error had no effect (*People v. Forrest* (2017) 7 Cal.App.5th 1074, 1086).

Applying these considerations, we conclude that there is a reasonable likelihood of a more favorable verdict in the absence of the prosecutorial error in this case. The prosecutor's misstatement of the standard for evaluating fear was not a one-time mistake. To the contrary, the prosecutor's comments on this point were repeated and vehement; he went so far as to characterize the subjective standard as "ridiculous." The evidence on this point was "close." Although, as we discuss next, there was sufficient evidence for a reasonable jury to find that Hasan was actually and subjectively afraid because he so indicated in his preliminary hearing testimony and he testified that he stepped back and let the defendant leave after the defendant flashed the knife, a reasonable jury could also have found that Hasan was *not* subjectively afraid in light of his repeated insistence—no fewer than four times during his trial testimony—that he had "no fear" and did not "feel threatened" by defendant. The CALCRIM No. 1600 jury instruction, as we have noted, did not speak to the issue of whether the victim's fear must be subjective or objective, and thus did not in any manner

11

correct the prosecutor's misstatement of law. (Accord, *People v. Medellin* (2020) 45 Cal.App.5th 519, 535-536 [where "CALCRIM definition did not clarify [a] point" on which the prosecutor made misstatement, error was prejudicial].) And the jury made no findings that suggested a finding that Hasan was subjectively afraid. Because the prosecutorial error was prejudicial under the more lenient standard for violations of the state Constitution, it is necessarily prejudicial under the more demanding "harmless beyond a reasonable doubt" standard applicable to violations of the federal Constitution.

The People respond with four arguments. First, the People assert that the prosecutor's comments were fleeting. The record contradicts this assertion. Second, the People contend that the CALCRIM No. 1600 instruction blunted the impact of the prosecutorial error. As we have explained, it did not. Nor was the prosecutor's misstatement of law corrected by defense attorney's competing *argument* about the pertinent definition of "fear"; where, as here, the court's standard jury instruction did not tell the jury which of the two irreconcilable standards was the correct one and resolution of this legal question was the critical issue at trial, the court's failure to provide necessary guidance was prejudicial. (Accord, *People v. Pike* (1962) 58 Cal.2d 70, 98 [observing that "an[] erroneous statement of law" during closing argument may be "corrected by prompt instruction"].) Third, the People argue that the jury's finding that defendant personally used a dangerous or deadly weapon necessarily included a finding that he "used" the knife "in a menacing manner." This is true, but the menacing use of a knife represents at most an additional fact upon which a jury could infer *either* Hasan's actual fear *or* an objective, reasonable person's fear in that

12

situation; it does not establish or suggest that the jury found that Hasan was actually afraid. Lastly, the People urge that the robbery conviction could be sustained on the alternative ground that defendant used force (rather than fear). Although the "force" and "fear" grounds for robbery are separate and distinct bases for a robbery conviction (§ 211 ["force *or* fear"]; e.g., *People v. Borra* (1932) 123 Cal.App. 482, 484), we have no way of knowing which ground the jury relied upon in this case and the evidence of force in this case—given that defendant never touched Hasan—was, at best, weak.

## II.    Substantial Evidence

In evaluating whether substantial evidence supports the jury's finding that Hasan was actually, subjectively in fear when he permitted defendant to walk out of the Walgreens with merchandise, our task is a narrow one. We ask whether the record as a whole """discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a *reasonable trier of fact* could find the [pertinent element] beyond a reasonable doubt.""" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 277, quoting *People v. Guiton* (1993) 4 Cal.4th 1116, 1126.) In undertaking this inquiry, we view the evidence in the light most favorable to the jury's verdict, which includes "resolv[ing] conflicting inferences" and credibility findings in favor of those verdicts. (*People v. Casares* (2016) 62 Cal.4th 808, 823, overruled on other grounds in *People v. Dalton* (2019) 7 Cal.5th 166; *People v. Reed* (2018) 4 Cal.5th 989, 1006.)

Here, there was substantial evidence from which a reasonable jury could find beyond a reasonable doubt that Hasan was actually afraid of defendant at the time Hasan allowed defendant to leave the store with Walgreens's merchandise. In

13

his preliminary hearing testimony, which was admitted for its truth at trial, Hasan testified that he "fel[t] threatened when [defendant] pulled out the knife." Hasan's preliminary hearing testimony about his actual fear was corroborated by his contemporaneous conduct—namely, when defendant pulled out the knife, Hasan stepped back and allowed defendant to walk away with the merchandise. (*People v. Renteria* (1964) 61 Cal.2d 497, 499 (*Renteria*) ["'Prompt compliance with the commands of an armed person, who by words or demonstration threatens bodily harm for failure to do so, furnishes some evidence of fear'"].)

Defendant resists this conclusion with what boils down to four arguments.

First, defendant points to Hasan's repeated assertions at trial that he was not actually afraid and his explanation at trial that his prior, preliminary hearing testimony about feeling threatened meant only that "[a] threat was made," but that Hasan "didn't feel like [defendant] was threatening [him]." At most, this evidence creates an inconsistency between Hasan's trial testimony on the one hand, and his preliminary hearing testimony and his contemporaneous actions (of stepping back and allowing defendant to leave) on the other. But "[i]t is for the trier of fact to consider internal inconsistencies in testimony" (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 878), and it is for us when reviewing for substantial evidence to resolve the inconsistencies in favor of the verdict. To the extent defendant asserts that Hasan's proclamations at trial of being bravely unafraid are *dispositive*, he is wrong: As a general matter, juries may accept some parts of a witness's testimony and reject other parts (*Lindemann v. San Joaquin Cotton Oil Co.*

14

(1936) 5 Cal.2d 480, 503-504 ["[t]he jury is the sole judge of the credibility of the witnesses, and may believe all of the testimony of a witness or believe a part . . ."]; CALCRIM No. 226); and, more specifically, a robbery victim's trial testimony that he or she was not afraid is only one piece of evidence and may be contradicted—and outweighed—by other evidence of actual fear (*Renteria*, *supra*, 61 Cal.2d at p. 499 ["The People are not 'bound' by [the victim's] testimony that he was not in fear" where "there is other evidence which will support the conclusion that he acted in fear . . ."]; see also *People v. Iniguez* (1994) 7 Cal.4th 847, 857 [same].)

Second, defendant argues that Hasan testified that it was Walgreens's store policy for assistant managers not to physically confront shoplifters, such that the reason Hasan let defendant walk away was Walgreens's company policy—not Hasan's actual fear. However, Hasan also testified that defendant's display of the knife was "why [he] stepped back and . . . just let him proceed to walk on out the store." As noted above, we must construe Hasan's potentially inconsistent testimony in the light most favorable to the verdict. Were we to treat the simple existence of a store policy mandating that shoplifters not be confronted as dispositive, there could *never* be a robbery inside stores with such a policy.

Third, defendant contends that Hasan testified that he stepped back *before* defendant pulled out the knife. However, Hasan also testified—repeatedly—that he stepped back *after* seeing the knife and *because* of the knife. Once again, we must construe this potential inconsistency in the light most favorable to the verdict.

Lastly, defendant urges that the People cannot rely on Hasan's fear on behalf of third parties in the store or defendant's

15

use of force as alternative means of saving the conviction. In light of our conclusion that there was substantial evidence to support robbery on the basis of Hasan's fear of harm to himself—and because a robbery conviction is valid even if only supported by substantial evidence of fear (but not force) (*People v. James* (1963) 218 Cal.App.2d 166, 169-170; *People v. Welch* (1963) 218 Cal.App.2d 422, 423)—we have no occasion to reach these alternative arguments.

\*     \*     \*

Because of the prejudicial prosecutorial error, we must reverse defendant's conviction for second degree robbery. Because substantial evidence supports a conviction of that crime, we must remand for possible retrial rather than dismiss the charge entirely.

## DISPOSITION

Defendant's second degree robbery conviction is reversed and remanded with the following directions:  If the People do not retry defendant for second degree robbery pursuant to section 211 within the statutory time period, or if the People file a written election not to retry defendant, the trial court shall proceed as if the remittitur modified the judgment to reflect a conviction for misdemeanor petty theft rather than second degree robbery, and resentence defendant accordingly.  (See *People v. Edwards* (1985) 39 Cal.3d 107, 118.)

**CERTIFIED FOR PUBLICATION**.


_____, J.

HOFFSTADT


I concur:


_____, P. J.

LUI

17

*People v. Collins*, B304853

ASHMANN-GERST, J.—Dissenting

     I respectfully dissent.

     I agree with the majority's implicit conclusion that the instructions given to the jury, specifically CALCRIM No. 1600, were correct.  And I agree with the majority that there was substantial evidence that the victim, Amir Hasan, "was actually, subjectively in fear when he permitted defendant [Jesse Quincy Collins] to walk out of the Walgreens with merchandise." (Maj. Opn., at p. 13.)  I part company with them because even in light of these acknowledgements, the majority contends that the prosecutor committed *reversible* error by misstating the law in his rebuttal argument when he told the jury that "'[t]he law'" uses an "objective standard" for evaluating fear, even though the law has uniformly adopted a subjective standard.  (Maj. Opn., at p. 9.)

     A.  <u>Relevant law</u>

     The standard governing review of prosecutorial error claims is well-settled.  "A prosecutor's conduct violates the Fourteenth Amendment of the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process."  (*People v. Morales* (2001) 25 Cal.4th 34, 44.)  "Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*Ibid.*)

"'[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements. [Citation.]' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 829–830.) But, those misstatements must be evaluated "'[i]n the context of the whole argument and the instructions' [citation], [and the defendant must show that] there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.]'" (*People v. Centeno* (2014) 60 Cal.4th 659, 667; see also *People v. Thompson* (2010) 49 Cal.4th 79, 121.) In conducting this inquiry, the reviewing court does not lightly infer that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's comments. (*People v. Thompson*, *supra*, at p. 121.)

Any trial court rulings on prosecutorial error are reviewed for abuse of discretion. (*People v. Peoples* (2016) 62 Cal.4th 718, 792–793.)

B. <u>Analysis</u>

As set forth in the majority opinion, the prosecutor misstated law regarding the element of fear in a robbery charge. In reaching this conclusion, the majority focuses only on the prosecutor's comments in his rebuttal argument. But, that was not the linchpin of the prosecutor's entire argument. Throughout his entire closing argument, the prosecutor discussed the evidence and all of the elements of the crime that the People needed to prove—not just "fear." As for the element of "fear," during his initial closing argument, the prosecutor specifically referenced the trial court's instruction on the elements of robbery and then argued that the evidence demonstrated the victim's

2

fear. The prosecutor even quoted CALCRIM No. 1600's definition of fear and then told the jury that the victim's "actions alone show that he was in fear." These comments correctly argued and applied the law and render harmless the brief misstatements, appearing on only one page of the reporter's transcript, made during rebuttal. (*People v. Cortez* (2016) 63 Cal.4th 101, 133–134 ["In summary, given that the challenged comments were brief and constituted a tiny, isolated part of the prosecution's argument, that the prosecution was responding to defense counsel comments, that the prosecution expressly referred the jurors to the instruction they had on reasonable doubt, that both the court and defense counsel properly defined 'reasonable doubt' numerous times, and that the jury had written instructions during deliberations that properly defined the standard, we find no reasonable likelihood the jury construed or applied the prosecution's challenged remarks in an objectionable fashion"].)

Furthermore, defense counsel argued that the People had to prove that the victim was actually, subjectively afraid. Counsel stated that the People had to prove "beyond a reasonable doubt that my client did something to instill fear in the victim, and that is how the theft was accomplished." Thus, the jury was not left with only what the prosecutor argued.

And, it was not likely that the jury applied the prosecutor's misstatements in an objectionable fashion. After all, the trial court properly instructed the jury. First, it used CALCRIM No. 1600. Included in that instruction was a definition of "fear": "*Fear*, as used here, means fear of injury to the person himself or herself or immediate injury to someone else present during the incident or to that person's property." As the majority agrees, this instruction was correct. (*People v. Meneses* (2019) 41

3

Cal.App.5th 63, 74.)  No further explication was required.  The term "fear" is not a technical term with a peculiar meaning under the law; rather, we presume it to be within the understanding of jurors.  (*People v. Griffin* (2004) 33 Cal.4th 1015, 1025–1026; *People v. Morehead* (2011) 191 Cal.App.4th 765, 774; *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1708.)

In addition, when instructing the jury, the trial court told them to "follow the law as I explain it to you, even if you disagree with it.  If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."  Later, when defense counsel objected to the prosecutor's misstatement of the law during rebuttal, the trial court informed the jury:  "Ladies and gentlemen, you are to follow the law as it is stated in the instructions."  We presume the jury followed the trial court's instructions.  (*People v. Meneses*, *supra*, 41 Cal.App.5th at p. 75.)

Significantly, the jury found true the allegation that in the commission of the robbery, "defendant personally used a deadly and dangerous weapon, to wit, a knife."  People "do not ordinarily give up their hard-earned cash to a stranger who threatens them with a gun, except for fear of bodily injury in the event of a refusal to do so."  (*People v. Borra* (1932) 123 Cal.App. 482, 485.)  For an unarmed victim, a knife engenders the same fear of bodily injury as a firearm.  Given that defendant brandished a knife, there is no reason to question whether the jury determined that the victim felt afraid.

In fact, as pointed out by the majority, there was substantial evidence of the victim's subjective fear.  (*People v. Anderson* (2007) 152 Cal.App.4th 919, 946 ["the fear necessary for robbery is subjective in nature"].)  As one legal treatise has

4

explained, "if the circumstances are such that a reasonable person would not be scared, a jury might properly infer that the victim, in spite of his testimony to the contrary, was not in fact scared. . . . But if the victim is actually frightened by the defendant into parting with his property, the defendant's crime, on principle, is robbery." (3 LaFave, Substantive Criminal Law (3d ed. 2018) § 20.3(d)(2), pp. 244-245, fn. omitted.) Given the substantial evidence of the victim's subjective fear, there is no reasonable likelihood that the jury misapplied the correct jury instruction based upon what the prosecutor stated.

Because the trial court properly instructed the jury, I do not think that the trial court should have added anything to the standard CALCRIM instruction. In criminal cases, the trial court has the duty to ensure that the jury is adequately instructed on the applicable law to the extent necessary to allow it to decide the case. (*People v. Wims* (1995) 10 Cal.4th 293, 303; *People v. Shoals* (1992) 8 Cal.App.4th 475, 489.) That is exactly what the trial court did here.



_____, J.
ASHMANN-GERST