Filed 6/20/23 Certified for Publication 7/14/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KARL ZIRPEL, | B317334 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC684618) |
| v. | |
| ALKI DAVID PRODUCTIONS, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge.  Affirmed.

Glaser Weil Fink Howard Avchen & Shapiro and Fred D. Heather for Defendant and Appellant.

JML Law, Nicholas W. Sarris and Jennifer A. Lipski for Plaintiff and Respondent.

Defendant and appellant Alki David Productions, Inc. (ADP) appeals from the judgment entered in favor of plaintiff and respondent Karl Zirpel (Zirpel) after a jury found ADP liable for whistleblower retaliation under Labor Code[1] section 232.5, which prohibits an employer from discharging an employee who discloses information about the employer's working conditions, and section 1102.5, subdivisions (b) and (c), which prohibits an employer from retaliating against an employee who refuses to participate in an activity that would violate the law or who discloses information the employee reasonably believes would disclose a violation of law. The jury awarded Zirpel $7,068,717 in damages (consisting of $368,717 in economic damages, $700,000 in non-economic damages, and $6 million in punitive damages). The jury further found that ADP wrongfully terminated Zirpel's employment after he refused to work on an equipment installation at a theater because the work would violate the law and because Zirpel reasonably believed that the work would violate the law. The jury further found that ADP terminated Zirpel's employment with malice, oppression, or fraud. The trial court denied ADP's motions for judgment notwithstanding the verdict (JNOV) and for a new trial.

We affirm the judgment.

---

[1] All further statutory references are to the Labor Code, unless stated otherwise.

2

# BACKGROUND

*The Parties*

ADP is an entertainment and media company owned by its principal, Alkiviades David (David). ADP initially produced internet programming, but in 2014 it began focusing on hologram technology, by which images are projected onto a screen and reflected for audience viewing.

Zirpel was employed by ADP from 2013 to 2017. During his employment, Zirpel became heavily involved in hologram production. He learned the technology, how to install the equipment, and how to stage productions that ADP created for television shows, concerts, and museums. Zirpel became ADP's vice president of operations in March 2014. His annual salary at the time ADT terminated his employment was $72,800.

*The Theater*

In September 2017, Zirpel began working at a church on Hollywood Boulevard that ADP was converting into a theater for hologram productions (the theater). Zirpel was responsible for installing production equipment used to create the hologram. ADP had scheduled a private, invitation-only special event at the theater for celebrities and potential investors to take place on September 28, 2017 (the event). ADP had also issued press releases about the theater's scheduled opening date of September 28, 2017.

When Zirpel began working at the theater, very little construction work had been done. There were no restrooms, fire exit signs, ADA-compliant ramps, or drywall. The hologram equipment had not been installed and remained in a storage unit.

Zirpel was at the theater on September 25, 2017, when four different Los Angeles City inspectors arrived. Zirpel, ADP's in-house counsel Manuel

3

Nelson (Nelson), and ADP's general contractor accompanied each of the inspectors on four separate walk-through inspections of the theater. Each of the inspectors indicated code deficiencies that required correction, and each "denied their own approvals" of work that had been done to date. Zirpel learned of approximately 20 code violations, including plumbing and electrical violations.

Zirpel was concerned about the plumbing and electrical work in relation to the hologram equipment he was to install. Projection equipment weighing 700 pounds would be installed in the ceiling directly over the audience. Zirpel was concerned about the integrity of the ceiling and the floor and whether the equipment could fall on the theater attendees.

After the inspectors finished their September 25, 2017 walk throughs, Zirpel asked two of the inspectors whether ADP could obtain approval of the completed work before the event. Both inspectors told Zirpel that approvals would be impossible given their respective schedules and the amount of work to be done at the theater. Following the inspection, the Los Angeles Department of Building and Safety issued a correction notice identifying multiple violations of various municipal code sections pertaining to work done at the theater.

After the inspectors left, David ordered the construction crew to use plywood to cover exposed electrical wiring on the theater walls. The plywood was painted black and covered with drapes. Zirpel was concerned that these actions created a fire hazard and jeopardized the safety of ADP employees and the public. Zirpel was also concerned that David was pushing to hold the event even though the theater was not ready.

On September 26, 2017, Zirpel informed ADP's senior vice president of operations, Ian Robertson, about his concerns regarding the inspectors'

4

refusal to approve the work performed to date, and that two of the inspectors had said the theater could not open on September 28, 2017. Zirpel told Robertson he intended to telephone the fire inspector about these concerns. Later that day, Zirpel initiated a telephone call to Los Angeles County Fire Inspector Eugene Andrews. Zirpel did not complete the call because he was nervous about "ratting out my boss and the people that I worked with." Zirpel called back a second time and spoke to a receptionist. Without giving his name, Zirpel said the theater was scheduled to open on September 28; that inspectors had come, but "none of the work was approved to move forward with the opening;" no permits had been issued; and someone should come to the theater "to take a look and see what's going on." Zirpel was told that someone would come out the next day.

On September 27, 2017, Zirpel and ADP's chief technical officer, "Nick," met Los Angeles County Fire Inspector Andrews outside the theater. When Andrews asked who was in charge, Zirpel and Nick each identified the other as in charge. Andrews recorded both men's identification information. Andrews then walked into the theater, briefly looked around, stopped all work, and told everyone to leave.

Andrews walked back outside, and everyone else left the theater. Andrews said outside the theater that no work would be done inside without posted fire exit signs. Zirpel understood this to mean that "when those signs were posted, we had the clearance to go back in and work again."

Andrews told Zirpel and Nick about the Oakland Ghost Ship warehouse fire that had killed more than 20 people. Andrews said Zirpel and Nick could be held liable and referred to the district attorney for any fire-related injuries that occurred at the theater.

Nick left the theater to purchase fire exit signs and Zirpel left in a U-Haul truck to retrieve the hologram equipment from a storage unit. After leaving the theater, he texted Manuel Nelson about the conversation with Inspector Andrews. Zirpel informed Nelson that he was not comfortable being identified as the person in charge of the theater renovation and the subject of a possible referral to the district attorney if anything went wrong. Zirpel advised Nelson he would "get started on rigging [the] setup with the permit," asked if there was "a time frame for [the] permit," and said he would be "on standby to unload" the hologram equipment.

Nelson texted back, stating that a permit application had been submitted; that he was meeting with the inspectors the following day; and that until and unless the application was denied, "all of us need to continue working toward the special event." Zirpel remained concerned because "there were still so many corrections that needed to be done" before the event.

While Zirpel was driving back from the storage facility to the theater, David repeatedly attempted to reach him by telephone. David then texted Zirpel, stating, "We need this setup done. I read this text you sent. The permits will be given tomorrow morning. Nothing stops."

When Zirpel returned to the theater, he parked the U-Haul van and went inside to see work being done. Zirpel met with Ian Robertson and Nick and expressed concerns about installing the hologram equipment given the absence of approvals for the construction. Zirpel said the work should not be proceeding because it was unsafe and that it was "our job and our responsibility" to say so.

David arrived at the theater later and demanded to know why no work was being done. Zirpel responded they needed to discuss whether the event would go forward because "we've got none of the inspectors signed off on any

6

of the work done." He then listed reasons why the theater should not open on September 28.

David "immediately blew up," and told Zirpel to shut up and "go with the program," and that he was either "in or out." Zirpel kept repeating what they were doing was not safe. David went into a "fit of rage," yelled in Zirpel's face, and using numerous obscenities, told Zirpel to "get out," to "get the f . . . out, you faggot," and that Zirpel was fired. While yelling at Zirpel, David was standing so close to Zirpel that Zirpel could feel David's spittle flying against his face.

Zirpel handed David the U-Haul keys and walked out of the theater. As Zirpel did so, David told him to "suck my dick." Zirpel found the situation "traumatic," because he "wasn't out to a lot of people," including many with whom Zirpel worked in a very masculine construction environment. Zirpel had also trusted David, one of the few people who knew Zirpel was gay.

David followed Zirpel out of the theater and continued yelling at him, saying Zirpel was not a team player and that it was not Zirpel's job "to say what happens." David walked away, and then returned and "came to his senses," realized "the mistakes he made," and tried to embrace Zirpel. Zirpel told David to get away from him. Zirpel did not go back into the theater or return to work.

*The Event*

Nelson acted as project manager for the theater renovation. He testified that he received a special event permit for the September 28, 2017 event, which occurred as scheduled on September 28, 2017.

## PROCEDURAL HISTORY

Zirpel commenced this action against ADP and David on November 27, 2017. Zirpel alleged his termination constituted retaliation under section 1102.5, subdivision (b), for disclosing to ADP information Zirpel reasonably believed evidenced a violation of a statute, rule, or regulation, and under section 232.5, subdivision (c) for disclosing information about the employer's working conditions.

*The Trial*

Zirpel, Robertson, David, and Andrews testified at the trial. After Zirpel rested, ADP moved for nonsuit, which the trial court denied.

ADP then called Nelson as a witness and rested its case. Both parties then filed motions for a directed verdict. The trial court denied both motions but allowed Zirpel to amend his complaint to conform to proof by adding a claim under section 1102.5, subdivision (c), which prohibits retaliation against an employee "for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." (§ 1102.5, subd. (c).)

ADP filed a brief contending the new section 1102.5, subdivision (c) claim should not go to the jury because the basis for the claim—whether Zirpel's continued work would have violated a law—was a legal question for the court to decide. Zirpel agreed the question was a legal determination for the trial court to decide but argued he had presented sufficient evidence that his continued work would have been illegal. After hearing argument from the parties, the trial court ruled there was sufficient evidence to support the section 1102.5, subdivision (c) claim. When asked by ADP's counsel what the

8

alleged violation of law would have been, the trial court responded: "It would be the lack of obtaining a permit pursuant to the requirements of LA Municipal Code Chapter 9 and Sections 91.106.3.1.2.2, et seq."[2] The trial court subsequently instructed the jury "[t]he Court has determined that the September 28, 2017 event at the Hologram Theater had not been properly permitted and thus the construction that related to that September 28, 2017 event was unlawful."

*The Verdict*

The jury returned a special verdict finding ADP had terminated Zirpel's employment on September 27, 2017 and was liable under sections 1102.5, subdivisions (b) and (c) and section 232.5, subdivision (c). The jury awarded Zirpel $368,717 in economic damages and $700,000 in non-economic damages. The jury further found Zirpel had proven by clear and convincing evidence that ADP had terminated his employment with malice, oppression, and fraud.

The punitive damages phase of the trial was held on October 6, 2021. Zirpel presented evidence of ADP's financial condition that ADP had produced that day. Because ADP did not produce all of the requested documents, the trial court ruled that ADP could not challenge the sufficiency of the evidence of its net worth. The jury returned a verdict awarding $6 million in punitive damages against ADP.

---

[2] According to ADP, the trial court appears to have meant section 91.106.1.3.1.2.2.

9

*Post-trial Motions*

ADP filed motions for JNOV and a new trial, arguing that Zirpel's installation of the hologram equipment would not have violated any law because the Los Angeles Municipal Code (LAMC) section on which Zirpel had based his section 1102.5, subdivision (c) claim, LAMC section 91.106.1.3.1.2.2, was inapplicable. ADP argued it was entitled to judgment on the section 1102.5, subdivision (b) and section 232.5 claims because Zirpel had no reasonable basis for believing he was disclosing a legal violation, and such disclosure was not the reason his employment was terminated. ADP further argued the trial court's ruling on the section 1102.5, subdivision (c) claim was wrong as a matter of law and had prejudiced the jury's findings on the related section 1102.5, subdivision (b) claim. Finally, ADP argued the punitive damages award was unconstitutionally excessive as a matter of law. In support of the motions, ADP presented a copy of a document it claimed was a permit issued for the event.

After hearing argument from the parties, the trial court denied ADP's post-trial motions in their entirety. The trial court found there was substantial evidence of the requisite violation of law; that Zirpel had reasonable cause to believe ADP had violated the law; and that Zirpel's disclosure of information to the inspectors was a contributing factor in the termination of his employment. The trial court ruled that even if its ruling on the illegality of ADP's actions was wrong as a matter of law, the error was not prejudicial, as there was substantial evidence to support a damages award under section 1102.5, subdivision (b) and section 232.5; and the special verdict form agreed to by the parties did not segregate damages for each separate cause of action. Finally, the trial court upheld the punitive damages award based on "sufficient evidence of reprehensible conduct" by David.

10

This appeal followed.

## CONTENTIONS ON APPEAL

ADP raises the following contentions on appeal:

1. Judgment on the section 1102.5, subdivision (c) claim should be reversed because Zirpels' continued installation of the hologram equipment would not have violated any law.

2. Judgment on the section 1102.5, subdivision (b) claim should be reversed because the trial court erroneously found that construction for the event was unlawful and applied the wrong test of causation.

3. Judgment on the section 232.5, subdivision (c) claim should be reversed because the jury's finding of causation was not supported by substantial evidence and the trial court applied the wrong test of causation when denying the post-trial motions.

4. The punitive damages award should be reversed because it is unconstitutionally excessive.

## DISCUSSION

I. *Standard of Review*

""""A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. . . ." [Citation.]'" (*Clemmer v. Hartford Ins. Co.* (1978) 22 Cal.3d 865, 878, overruled on another ground by *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 131–132.) When the motion for JNOV raises a legal issue, we review the trial court's ruling under a de novo standard of

11

review.  (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)

We review the trial court's denial of a motion for a new trial for abuse of discretion.  (*Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, 1800, disapproved on another ground by *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 815, fn. 8.)  In doing so, we review the entire record independently to determine whether any alleged error occurred, and if so, whether there was resulting prejudice.  (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872.)

II.  *Section 1102.5, subdivision (c)*

Section 1102.5, subdivision (c) states:  "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."  "[T]o prevail on a claim under this provision, the plaintiff must identify both the specific activity and the specific statute, rule, or regulation at issue; the court must then determine the legal question whether the identified activity would result in a violation or noncompliance with the identified statute, rule, or regulation, and, if so, the jury must determine the factual issue whether the plaintiff was retaliated against for refusing to participate in the identified activity."  (*Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th 703, 706.)

Section 1102.6 prescribes a two-part burden shifting framework for deciding employee retaliation claims.  It states:  "In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity

12

proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5." (§ 1102.6.)

A. *Specific Activity*

The parties agree that Zirpel identified his continued installation of the hologram equipment in the theater as the specific activity that would violate a statute, rule, or regulation.

B. *Statute, Rule or Regulation*

ADP contends the trial court committed legal error when it found Zirpel's continued work at the theater would have violated Los Angeles Municipal Code section 91.106.1.3.1.2.1 (LAMC § 91.106.1.3.1.2.1), which requires issuance of a permit for the event.[3] ADP maintains this was error for two reasons—(1) ADP did obtain a permit for the event, and (2) LAMC section 91.106.1.3.1.2.1 was not in effect in September 2017. Neither reason is a basis for overturning the trial court's ruling.

Although there was substantial evidence ADP believed a permit was required for the event, no permit was offered or admitted into evidence at the

_____

[3] LAMC section 91.106.1.3.1 became effective on July 4, 2021. Section 91.106.1.3.1.2.1 states in part: "Before commencing a Temporary Installation or Temporary Outdoor Use, a permit authorizing such work or use shall be obtained from the Department." "Temporary Installation" is defined to include "[t]ents or canopies, larger than 12 feet in length or width, on a commercial property," "[s]tages or platforms more than 30 inches above grade," and "[t]emporary structures higher than 12 feet." (LAMC § 91.106.1.3.1.1.)

13

trial. ADP did not present any document it claimed to be a permit until it filed its motions for JNOV and a new trial. The document presented, captioned "Application for Temporary Special Event" indicates it was printed on October 7, 2021. There is no evidence showing a permit was issued to ADP before construction activity commenced at the theater.

ADP's second basis for the trial court's alleged legal error—that LAMC section 91.106.1.3.1.2.2 is inapplicable—is also not a ground for reversal. LAMC section 91.106.1.2.1.2.2 did not take effect until July 4, 2021 and did not apply to the work being done at the theater in 2017. The Los Angeles Municipal Code section in effect at the time, section 91.106.1.3,[4] applies to construction of any work for temporary use and requires issuance of a permit for such work before construction commences. (LAMC § 91.106.1.3.) ADP presented no evidence it obtained a temporary special event permit before commencing construction at the theater.

ADP argues LAMC section 91.106.1.3 applied only to "work for temporary use," whereas Zirpel's work was to install permanent hologram equipment at the theater. Zirpel and other witnesses testified, however, that the work to install the hologram equipment, whether permanent or for temporary use, was the "same process." As the trial court noted, there was ample evidence the hologram equipment was to be installed specifically for the September 28, 2017 special event. ADP's own belatedly produced application for a special event permit undermines its argument that section

---

4       LAMC section 91.106.1.3, in effect at the time the theater was being renovated, states: "Before commencing the construction of any work for temporary use, a building permit authorizing such work shall be obtained from the department. Such construction shall be occupied or used only for the period set forth on the permit application, but shall not exceed 120 days."

91.106.1.3 did not apply. ADP itself applied for such a temporary special event permit, although not, as section 91.106.1.3 requires, "[b]efore commencing the construction of any work for temporary use" (LAMC § 91.106.1.3) and not before Zirpel's employment was terminated. The permit ADP produced indicates it was issued on September 28, 2017, the day of the event.

Moreover, as the trial court noted, the record contains substantial evidence of multiple other municipal code violations in the correction notice issued by a city inspector on September 25, 2017. Substantial evidence supports the finding that Zirpel's continued work at the theater would have violated the law, and the trial court's finding in this regard was not legally erroneous.

III. *Section 1102.5, subdivision (b)*

Section 1102.5, subdivision (b) states: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

We reject ADP's argument the jury's finding Zirpel had reasonable cause to believe unsafe working conditions existed or that continued work on the theater would violate the law must be overturned because it was "irrevocably tainted" by the trial court's purportedly erroneous ruling that Zirpel's continued work at the theater would have violated the Los Angeles Municipal Code. For reasons discussed in section II of this opinion, the trial court committed no legal error by finding Zirpel's continued work at the theater would have violated a statute, rule, or regulation.

The trial court did not, as ADP claims, engage in a flawed legal analysis when it concluded substantial evidence supported the jury's finding Zirpel reasonably believed he disclosed to ADP and city inspectors unsafe working conditions and code violations at the theater. ADP's sole basis for this claim is the trial court's reference to *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121 (*Mokler*), and *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378 (*Patten*) in its ruling denying ADP's post-trial motions. ADP points out those two cases were disapproved by the Supreme Court in *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718 (*Lawson*). The Supreme Court in *Lawson* disapproved *Mokler* and *Patten* to the extent the courts in those cases applied the three-part burden shifting framework set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 when deciding section 1102.5 retaliation claims rather than the statutory framework prescribed by section 1102.6. (*Lawson, supra,* 12 Cal.5th at pp. 712, 718, fn. 2.) The trial court here did not apply the *McDonnell Douglas* burden-shifting framework. The record does not support ADP's claim that the trial court's analysis was legally flawed.

ADP does not challenge the sufficiency of the evidence supporting the jury's finding that Zirpel had reasonable cause to believe unsafe working

conditions existed or that continued work on the theater would violate the law. Substantial evidence, in any event, supports the finding. Zirpel testified that on September 25, 2017 he met with four different city inspectors who denied approval of the work done to date at the theater. Zirpel was particularly concerned about the electrical work and the position of the hologram projectors, which would be suspended above the theater audience. Zirpel's concerns prompted him to call a city fire inspector, who came to the theater the following day, temporarily stopped all work, and advised Zirpel that he could be held criminally liable in the event of a fire. Zirpel also expressed his concerns to Nelson about the absence of a permit and the approval of city inspectors. Zirpel reiterated those concerns to David when confronted about Zirpel's refusal to proceed on the hologram installation.

The record does not support ADP's argument that the trial court applied an incorrect test of causation. In its post-trial motions, ADP argued there was insufficient evidence Zirpel's disclosures were a contributing factor in the decision to terminate his employment. The trial court disagreed, citing evidence to the contrary presented at trial, including a text message Zirpel sent to Nelson on the day Zirpel was fired expressing concern about his potential exposure to criminal charges; a text message David sent to Zirpel shortly thereafter stating David had read the text; and Zirpel's testimony that when he told David that none of the inspectors had signed off on the work done at the theater, David "immediately blew up" and fired him. The trial court concluded this evidence, viewed in the light most favorable to Zirpel, supported a finding that Zirpel's disclosures were a contributing factor in terminating his employment. The trial court was not required to discuss in its written ruling evidence ADP presented to counter Zirpel's claims, and

17

the absence of such discussion does not constitute legal error. (See *Clemmer v. Hartford Ins. Co., supra,* 22 Cal.3d at p. 878.)

ADP contends the trial court failed to apply the burden-shifting framework prescribed by section 1102.6 when the court denied the motions for JNOV and a new trial.[5] ADP did not argue in its post-trial motions, however, it had sustained its statutory burden under section 1102.6 of demonstrating, by clear and convincing evidence, that Zirpel was fired for reasons other than his disclosures concerning the absence of a permit and the city inspectors' disapproval of the work done to date. The only evidence in the record to support ADP's claim Zirpel was fired for other independent reasons is David's testimony he believed Zirpel was refusing to work because he was trying to exact a pay raise. The jury and the trial court could reasonably have disregarded this testimony as lacking in credibility.

IV. *Section 232.5, subdivision (c)*

Section 232.5, subdivision (c) states in relevant part: "No employer may . . . [d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions." The jury was instructed that to prevail on this claim, Zirpel had to prove disclosure of his working conditions was a "substantial motivating reason" for terminating his employment. The jury was further instructed "[a] 'substantial motivating reason' is a reason that actually contributed to an

---

[5]    As discussed, section 1102.6 prescribes a two-part burden shifting framework for analyzing section 1102.5 retaliation claims. Under the statute, once Zirpel demonstrated by a preponderance of the evidence that his disclosures were a contributing factor in his discharge, the burden shifted to ADP to demonstrate by clear and convincing evidence that Zirpel would have been fired for other legitimate, independent reasons. (§ 1102.6.)

adverse employment action.  It must be more than a remote or trivial reason.
It does not have to be the only reason motivating the adverse employment
action."

Substantial evidence supports the jury's finding that Zirpel's disclosure
was a substantial motivating reason for his termination.  There was evidence
that immediately before Zirpel was fired, he repeatedly told David the
working conditions at the theater were unsafe.  In response, David became
enraged, yelled obscenities in Zirpel's face, and told Zirpel he was fired.

We reject ADP's claim that this evidence is insufficient because it is
based solely on the "temporal proximity" between Zirpel's disclosure and his
termination.  The causal link element of an employee retaliation claim may
be established by an inference derived from such circumstantial evidence.
(See *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52,
69 (*Morgan*).)  Temporal proximity alone, "when very close, can in some
instances establish a prima facie case of retaliation."  (*Arteaga v. Brink's, Inc.*
(2008) 163 Cal.App.4th 327, 354.)  Here, the temporal proximity was
immediate.  And there is more: David reacted with a "fit of rage" when Zirpel
confronted him with safety issues and lack of regulatory approval.  In
addition, there was evidence that David read and responded to a text
message Zirpel sent to a supervisor earlier that day expressing Zirpel's
concerns about working conditions at the theater and his potential liability
for workplace injuries.  David's response to Zirpel stated he had read Zirpel's
text message, that the work needed to be done, and "[n]othing stops."
Substantial evidence supports the jury's finding of causation.  (*Morgan,
supra,* 88 Cal.App.4th at p. 69 [plaintiff can satisfy initial burden in
retaliation claim by producing evidence of nothing more than the
""employer's knowledge that the [employee] engaged in protected activities

and the proximity in time between the protected action and the allegedly retaliatory employment decision"""].)

We reject ADP's argument the trial court committed legal error by ruling substantial evidence supported the jury's finding that Zirpel's disclosure was a "contributing factor" to his discharge. ADP contends the correct standard under section 232.5 is whether the disclosures were a "substantial motivating reason" for Zirpel's discharge. This semantic difference is not grounds for reversal. The trial court's written ruling indicates it applied the proper legal standard in assessing ADP's JNOV claim—whether substantial evidence supports the jury's verdict, viewing that evidence in the light most favorable to the verdict. (*Clemmer v. Hartford Ins. Co., supra,* 22 Cal.3d at p. 878.)

*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, which ADP cites as support for its argument, is inapposite. The court in that case found reversal was warranted because the trial court had incorrectly instructed the jury that the plaintiff in a wrongful termination case only had to prove discrimination was "a motivating factor/reason" for her discharge instead of "a substantial motivating factor/reason." (*Id.* at p. 232.) The jury in this case was properly instructed with the correct legal standard—that Zirpel had to prove the disclosure of his working conditions was a "substantial motivating reason" for terminating his employment.

V.  *Punitive Damages*

A.  *Applicable Law and Standard of Review*

California law permits awards of punitive damages "for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294, subd. (a).) After refusing to produce evidence of its financial condition, ADP

20

complains the award is grossly excessive and violates due process. We find no error.

"The imposition of 'grossly excessive or arbitrary' awards is constitutionally prohibited, for due process entitles a tortfeasor to "'fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.'"" (*Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1171 (*Simon*).) "[T]he constitutional 'guideposts' for reviewing courts are: '(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.'" (*Id.* at p. 1172.) We review the award de novo to determine if it is excessive. (*Ibid.*)

B. *Reprehensibility*

Of the guideposts for determining the constitutionality of a punitive damages award, reprehensibility is the most important factor. (*State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408, 419 (*State Farm*).) The United States Supreme Court has instructed courts to determine the reprehensibility of a defendant's conduct by considering whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." (*Ibid.*) A reviewing

21

court must consider the totality of the circumstances when determining the reprehensibility of a defendant's conduct. (*Ibid.*)

There is substantial evidence of reprehensible conduct on the part of ADP and its principal, David. David and Zirpel's superiors ignored Zirpel's repeated disclosures of potentially hazardous conditions at the theater, evincing a disregard of the health and safety of others. Conscious disregard of the safety of others can also constitute malice for purposes of a punitive damages award. (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 895–896.) Malice, for purposes of punitive damages, includes despicable conduct by the defendant with a willful and conscious disregard of the rights or safety of others. (Civ. Code, § 3294, subd. (c)(1).) Despicable conduct is conduct that is so "base, vile or contemptible" that it would be despised and looked down upon by ordinary people. (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1228.) There is substantial evidence David acted with malice when terminating Zirpel's employment. When Zirpel voiced his concerns regarding workplace safety, David yelled and screamed obscenities at Zirpel in front of his coworkers, called him a "faggot" and told him to "suck my dick." While screaming at Zirpel, David stood so close to him that spittle flew into Zirpel's face. After telling Zirpel he was fired, David followed Zirpel out of the theater building and continued to scream at him. The totality of the circumstances here supports a finding of reprehensible conduct.

C. *Ratio of Compensatory to Punitive Damages*

ADP argues the disparity between punitive damages ($6 million) and compensatory damages (approximately $1 million), a ratio of 6 to 1, is unconstitutionally excessive. There is no mathematical formula or bright-line ratio that a punitive damages award cannot exceed. (*State Farm, supra,*

538 U.S. at p. 425.)  Single-digit multipliers, however, such as the one applied here, "are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution." (*Ibid*.)  The California Supreme Court has concluded that an appropriate maximum ratio between punitive and compensatory damages beyond which punitive damages in a given case would be excessive, and therefore unconstitutionally arbitrary, is "10 times the compensatory award." (*Simon, supra*, 35 Cal.4th at p. 1188.)  The precise award, in any case, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff. (*State Farm, supra*, 538 U.S. at p. 425.)

The single-digit 6:1 ratio between punitive and compensatory damages in this case falls below the maximum 10:1 ratio prescribed by the Supreme Court in *Simon*. (*Simon, supra,* 35 Cal.4th at p. 1188.)  The facts and circumstances here, moreover, support the jury's award.  David berated and verbally abused Zirpel.  While doing so, David stood inches away from Zirpel, so close that his spittle flew into Zirpel's face.  David's verbal abuse was laced with obscenities and homophobic epithets.  To increase the humiliation, David berated Zirpel in front of his coworkers.  Zirpel, who had not revealed his sexual orientation to his coworkers, was traumatized by David's behavior.  The most reprehensible aspect of David's conduct was firing an employee for standing up for the safety of invitees to the event.

*Roby v. McKesson Corp*. (2009) 47 Cal.4th 686 (*Roby*), which David cites in support of his position, is distinguishable.  The plaintiff in that case, a long-time employee, developed a panic disorder, and the company's attendance policy disadvantaged employees with medical conditions that caused them to unexpectedly miss work.  The plaintiff was disparaged by her supervisor, then terminated. (*Id*. at pp. 694–696.)  A jury awarded the

23

plaintiff $3.5 million in compensatory damages and $15 million in punitive damages. (*Id*. at pp. 699–700.) The Supreme Court reversed the 4:1 punitive damages ratio, concluding the corporate defendant's adoption of a flawed attendance policy "was at the low end of the range of wrongdoing that can support an award of punitive damages." (*Id*. at pp. 717–718.)

Here, in contrast, ADP's principal, David, verbally abused Zirpel in the presence of his coworkers, screaming obscenities and homophobic epithets in Zirpel's face, following him outside the theater, and telling him to "suck my dick." This conduct is substantially different than the adoption of a flawed attendance policy by the corporate defendant in *Roby*. We cannot conclude the conduct at issue here was at a "low end of the range" of reprehensible behavior, warranting reversal of the jury's punitive damages award.

ADP argues the punitive damages vastly exceed the maximum civil penalty for such conduct. ADP points out that whistleblower retaliation is punishable under the Labor Code by a civil penalty "not exceeding ten thousand dollars." (§ 1102.5, subd. (f).) But ADP fails to acknowledge its wrongful conduct was much broader than whistleblower retaliation under section 1102.5 and included violation of section 232.5, which sets no maximum civil penalty. ADP identifies no analogous civil penalties for this conduct against which to measure the punitive damages award.

Under the circumstances presented here, the punitive damages award is not constitutionally excessive.

//

//

//

//

//

24

## DISPOSITION

The judgment is affirmed.  Zirpel shall recover his costs on appeal.


ZUKIN, J.*


We concur:



CURREY, Acting P. J.



COLLINS, J.


---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 7/14/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KARL ZIRPEL, | B317334 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC684618) |
| v. | |
| ALKI DAVID PRODUCTIONS, INC., | ORDER GRANTING PUBLICATION |
| Defendant and Appellant. | |

THE COURT:*

The opinion in the above-entitled matter filed on June 20, 2023, was not certified for publication in the Official Reports. Good cause appearing, it is ordered that the opinion in the above-entitled matter be published in the official reports.

---

*CURREY, P. J.        COLLINS, J.        ZUKIN, J.